**E-FILED**
Monday, 12 February, 2007  09:21:50 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

1/11/07

**FILED**

FEB 9 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-40117 |
| | ) |
| PELETI PELETI, JR., a/k/a "Pete," | ) |
| | ) |
| Defendant. | ) |

### PLEA AGREEMENT AND STIPULATION OF FACTS

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the United

States of America, by Rodger A. Heaton, United States Attorney for the Central

District of Illinois, and Jeffrey B. Lang, Assistant United States Attorney, and the

defendant, Peleti Peleti, Jr., a/k/a "Pete," personally and by the defendant's

attorney, Donovan S. Robertson, hereby enter into this Plea Agreement.

1.     This document contains the complete and only Plea Agreement

between the United States Attorney for the Central District of Illinois and the

defendant. This Agreement supersedes and replaces any and all prior formal and

informal, written and oral, express and implied, plea agreements between the

parties. No other agreement, understanding, promise, or condition between the

United States Attorney for the Central District of Illinois and the defendant exists,

except as set forth in this Plea Agreement.

2. This Plea Agreement is binding only upon the United States Attorney for the Central District of Illinois and the defendant. It does not bind any United States Attorney outside the Central District of Illinois, nor does it bind any state or local prosecutor. In addition, the Plea Agreement does not bind the Tax Division of the United States Department of Justice or the Internal Revenue Service of the United States Department of the Treasury.

3. This Agreement is made pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, and therefore if the Court does not accept the recommendations of the parties, the defendant does not have the right to withdraw his pleas of guilty.

## CHARGES, ELEMENTS, AND PENALTIES

4. The defendant will waive indictment pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure and plead guilty to the Information, in which the defendant is charged in Count One with Receiving a Bribe in violation of Title 18, United States Code, Section 201(b)(2)(A), and in Count Two with Bulk Cash Smuggling into the United States in violation of Title 31, United States Code, Section 5332.

5. The defendant has read the charges to which the defendant is pleading guilty, and the charges have been explained to the defendant by the defendant's attorney. Furthermore, the defendant fully understands the nature and elements of

2

the crimes to which the defendant is pleading guilty. To sustain the charges, the United States must prove each of the following propositions beyond a reasonable doubt:

## Count One
### Receiving a Bribe
### 18 U.S.C. § 201(b)(2)(A)

First, that the defendant was a public official;

Second, that the defendant corruptly accepted or received something of value personally; and

Third, that the defendant knew that what he accepted or received was accepted or received in return for being influenced in the performance of any official act.[1]

## Count Two
### Bulk Cash Smuggling
### 31 U.S.C. § 5332

First, that the defendant knowingly concealed on his person, that is, in any article of clothing worn by the defendant or in any luggage, backpack, or other container worn or carried by the defendant, more than $10,000 in currency;

Second, that the defendant knowingly transported or transferred such concealed currency from a place outside the United States to a place within the United States; and

Third, that the defendant did so with the intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316.

---

[1] It is not necessary that the defendant had the power to or did perform the act for which he received something of value; it is sufficient if the matter was one that was before him in his official capacity. Nor is it necessary that the defendant in fact intended to be influenced. It is sufficient if the defendant knew that the thing of value was offered with the intent to influence official action. Seventh Circuit Federal Criminal Jury Instructions for 18 U.S.C. § 201.

6.    The defendant understands and agrees that the offenses to which he shall plead guilty carry the following potential penalties:

### Count One – Receiving a Bribe, 18 U.S.C. § 201(b)(2)(A)

- up to 15 years in prison;
- up to a $250,000 fine;
- up to three years supervised release; and
- a $100 special assessment.

### Count Two – Bulk Cash Smuggling, 31 U.S.C. § 5332

- up to five years in prison;
- up to a $250,000 fine;
- up to three years supervised release; and
- a $100 special assessment.

7.    The defendant understands that the sentences on each count to which he is pleading guilty may be ordered to be served consecutively (in addition to each other).  Consequently, the maximum possible sentence which could be imposed on the combined counts is:

- up to 20 years in prison;
- up to a $500,000 fine;
- up to six years supervised release; and
- a $200 special assessment.

8.    The defendant further understands that upon violation of any of the terms of the defendant's supervised release, the supervised release may be revoked and the defendant may be imprisoned for all or part of the supervised release period without credit for time previously served.

4

9.    The defendant understands and agrees that the Court may be required to order the defendant to pay restitution. The parties to this Agreement have not reached a determination on the issue of restitution. Restitution may include the cost of incarceration and supervision. The parties acknowledge that the Court may order restitution in whatever amount it deems proper.

## STATUTORY AND APPEAL WAIVERS

### Waiver of Right of Appeal from Conviction and Sentence

10.    The defendant is aware that federal law, specifically, Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this Plea Agreement and conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentence, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this Plea Agreement, unless otherwise stated in this paragraph.

## Waiver of Right to Collateral Attack

11.    The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack.  The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255.  The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute.  Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence.  The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant.  The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right.  Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this Plea

Agreement, the defendant hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include his right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

## ADVISORY SENTENCING GUIDELINES

12.    The defendant understands that the Court will calculate the defendant's offense level and criminal history category under the United States Sentencing Guidelines, and that the Court will use those calculations to arrive at an advisory sentencing range under the Guidelines. The defendant understands that the Court must consider the advisory Sentencing Guidelines range when imposing sentence. The Court shall also consider the other factors listed under Title 18, United States Code, Section 3553(a) in determining the specific sentence to be imposed. The defendant understands that although the Sentencing Guidelines are advisory, the Court may choose to impose sentence in accordance with the Sentencing Guidelines.

13.    Based on the information currently available, the defendant and the United States agree on the following points regarding the application of the Sentencing Guidelines to the offense to which the defendant is pleading guilty:

a.    The parties agree, based upon facts currently known by the United States, that the defendant intends to continue to demonstrate a recognition

7

and affirmative acceptance of personal responsibility for the defendant's criminal conduct in accordance with Section 3E1.1 of the United States Sentencing Guidelines and, in that case, a two-level reduction in the offense level would be appropriate. Acceptance of personal responsibility shall include cooperating fully with the United States Probation Office in the preparation of a presentence report and not committing any bond violations while on pretrial release, including but not limited to the commission of any local, state or federal offenses. This Agreement does not preclude the United States from changing its position if new evidence to the contrary is discovered or if the defendant later demonstrates a lack of acceptance of personal responsibility for the defendant's criminal conduct.

    b.  The parties further agree that since the defendant's offense level (including adjustments for Specific Offense Characteristics and other provisions) will be 16 or higher, then the defendant qualifies for an additional one-level reduction in the defendant's offense level pursuant to United States Sentencing Guidelines Section 3E1.1(b)(2) because the defendant timely notified the United States Attorney's Office of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid trial preparation and permitting the Court to allocate its resources efficiently.

c.    The parties further agree that the monetary amount of the defendant's relevant criminal conduct was at least $50,000, and that a six-level upward adjustment of the defendant's offense level is therefore warranted under Section 2B1.1(b)(1)(D) of the United States Sentencing Guidelines.

14.    The defendant and the United States agree that the above statements regarding Sentencing Guidelines calculations are not binding on the Court, and relate only to the positions the parties take regarding the applicable advisory Sentencing Guideline range based upon the information of which they are currently aware. The Court will remain free to make its own independent determination of the applicable advisory Sentencing Guideline range. The defendant and the United States agree that if the sentence imposed by the Court falls within the applicable advisory Sentencing Guidelines range, such a sentence is reasonable.

15.    The defendant agrees that at the time of sentencing, the Court will not be bound by any recommendation made by any party, and that the Court will be free to impose whatever sentence it deems appropriate under the law, including, if appropriate, up to the statutory maximum. The defendant agrees and understands that the defendant will not be allowed to withdraw the defendant's guilty plea because of an objection to the calculation of the Sentencing Guidelines, or to the Court's sentencing findings or rulings, or because the defendant receives a sentence

higher than that suggested through application of the individual Sentencing Guidelines terms agreed upon in this Plea Agreement.

16.    The United States reserves the right, in its sole discretion, to request that the Court consider imposing a sentence below the advisory Sentencing Guidelines range if the defendant provides substantial assistance in the investigation or prosecution of other criminal offenses. A decision, if any, to recommend a particular sentence below the advisory Sentencing Guidelines range will depend solely upon the United States' evaluation of the nature, extent, and value of the defendant's assistance, including the defendant's truthfulness.

## DEFENDANT'S OBLIGATIONS

17.    As a condition of this entire Plea Agreement, the defendant will cooperate fully with law enforcement officials, as agreed in the cooperation agreement letter dated August 10, 2006, from Assistant United States Attorney Jeffrey B. Lang to Donovan S. Robertson, Esq., and executed by the defendant on August 14, 2006. A copy of the cooperation agreement is appended hereto as Exhibit A and incorporated herein by reference.

18.    The defendant agrees to and waives any rights the defendant may have under the Speedy Trial Act, and the defendant understands that his sentencing may be delayed until his cooperation has been completed so that at sentencing the court will have the benefit of all relevant information.

10

19.    The defendant and his attorney acknowledge that they have reviewed, and the defendant understands, the possible application of Title 18, United States Code, Section 3553(e). They further acknowledge, consistent with Application Note 3 to United States Sentencing Guidelines Section 5K1.1, that the United States is in the best position to assess the value of the defendant's cooperation to the United States and its law enforcement efforts. In return for receiving the opportunity to cooperate with the government and for the opportunity to be considered by the government for a recommendation for a sentence below the advisory Sentencing Guidelines range by virtue of substantial assistance to the government, the defendant and his attorney agree to limit any argument regarding the extent of deviation from the advisory Sentencing Guidelines range for substantial assistance to the government to only those grounds specifically set forth in Section 5K1.1 and its application notes.

20.    The defendant further understands and agrees to pay the mandatory $200 Special Assessment for the two offenses to which the defendant is entering pleas of guilty, as is required under Title 18, United States Code, Section 3013. The defendant agrees to pay this mandatory special assessment at the time of sentencing by delivering a check or money order made payable to the United States District Court and understands that he will be required to do so as a condition of this Plea

Agreement. The failure to comply with this requirement, however, will not constitute grounds for the defendant to withdraw any plea of guilty.

### THE UNITED STATES ATTORNEY'S OBLIGATIONS

21.     The United States Attorney for the Central District of Illinois agrees to bring no additional criminal charges in the Central District of Illinois against the defendant relating to or arising from the offense charged in this Information, except for any crime of violence and any crime unknown to the United States Attorney for the Central District of Illinois prior to the time this Plea Agreement is signed by the parties.

22.     The United States agrees that at the time of sentencing it will fully inform the Court of the nature, extent, and value of any cooperation rendered by the defendant.

23.     The United States agrees with its obligations as set forth in the cooperation agreement letter dated August 10, 2006, which is appended hereto as Exhibit A.

## FACTUAL BASIS

24.    The defendant will plead guilty because the defendant is in fact guilty of the charges contained in the Information. In pleading guilty to these charges, the defendant admits to the following facts:

a.    On December 14, 2001, the United States Army Operations Support Command, headquartered at the Rock Island Arsenal at Rock Island, Illinois, within the Central District of Illinois, awarded the Logistics Civil Augmentation Program III ("LOGCAP III") prime contract, designated contract number DAAA09-02-D-0007, to the company now known as Kellogg Brown & Root Services, Inc. ("KBR"). As the prime contractor under LOGCAP III, KBR was to provide services and other logistical support to the United States military at locations around the world, including Iraq.

b.    The Army Field Support Command, also located at the Rock Island Arsenal, administered the LOGCAP III prime contract. The Field Support Command's duties included the issuance of task orders to KBR under the LOGCAP III prime contract. Each Task Order incorporated a statement of the work to be performed by KBR and the period of time to perform the work. Additionally, the Resource Management Unit of the Army Field Support Command managed the money for the LOGCAP III prime contract. This included the Resource Management Unit obligating funding in Rock Island, Illinois for the payment of task orders.

13

c.      Upon the accomplishment of a given task order, KBR sent public vouchers to the government for the cost of the work done plus KBR's allowable fees under the LOGCAP III prime contract.  The vouchers were then paid by the United States Government.

d.      Among the Army's requirements to be accomplished through task orders issued under the LOGCAP III prime contract was the providing of dining facilities, meal services, and the attendant supplies needed by soldiers to dine, including paper products and plastic flatware.

e.      As of the date of this Plea Agreement, the defendant had served in the U.S. Army for approximately 22½ years.  Much of that was in the food service field.  In and before 2005, the defendant, who held the rank of Chief Warrant Officer, served as the Army's Theater Food Service Advisor for Kuwait, Iraq and Afghanistan.   He was the advisor to the Commander on all facets of the Army's food service program for soldiers in those countries. He was stationed at Camp Arifjan in Kuwait and reported to Army command officials there.

f.      Among the defendant's duties was the monitoring of Army food service contracts in Kuwait, Iraq and Afghanistan, including the acquisition and distribution of  food and related food service supplies at Army bases and camps.

14

g.    The defendant was aware that KBR was generally responsible for providing the food service at Army bases and camps in Kuwait, Iraq and Afghanistan under the LOGCAP III prime contract. The defendant was further aware that KBR performed its food service obligations through subcontracting with other food service vendors.

h.    The defendant's responsibilities as the Army's Theater Food Service Advisor brought him into contact with food service vendors in Kuwait and elsewhere. One such company with which the defendant had contact is referred to herein as "Company A." Company A was based in Kuwait City, Kuwait, and the defendant became personally acquainted with its president in 2005.

i.    In mid-2005, the defendant was shown samples of food service paper products and plastic flatware that Company A wanted to market to the U.S. Army for the military's food service needs. The defendant inspected the samples and found the plastic flatware to be stronger, but more expensive, than that which was then being supplied by KBR and its food service vendor subcontractors under the LOGCAP III prime contract. The defendant concluded that Company A's plastic flatware was preferable, but recognized that food service supplies, including flatware, were already being provided for under LOGCAP III.

15

j.    The defendant subsequently attended a meeting at the residence of the president of Company A in Kuwait City. After dinner, the defendant and the president of Company A discussed the fact that Company A was seeking to contract with the Army for food service supplies, including paper products and plastic flatware. The defendant advised the president of Company A that he believed that these were good products, but that he would have to refer the consideration of them to the board which made decisions and recommendations about which food service supplies the Army purchased and used.

k.    The defendant thereafter attended another meeting with the president of Company A concerning Company A's food service supplies. Also attending the meeting were approximately 25 U.S. military personnel who served on the board that made decisions and recommendations concerning food service supplies purchased by the Army. The defendant and the board members viewed Company A's products and concluded that they would meet the Army's needs.

l.    The defendant had additional meetings with the president of Company A and others concerning the food service supplies, including paper products and plastic flatware, for which Company A was seeking to contract with the Army. During one meeting at the office of Company A in Kuwait City in or about October 2005, the defendant advised the president of Company A that he (the

16

defendant) would be leaving his assignment as Theater Food Service Advisor in December 2005. The defendant further advised the president of Company A that although the Army was still considering his offer to provide food service supplies, including paper products and plastic flatware, it was going to be difficult for Company A to obtain the contract for such.

        m.    The defendant subsequently telephoned and e-mailed the Army Center of Excellence for Subsistence at Fort Lee, Virginia, in an effort to facilitate a contract with Company A for food service supplies. Despite his efforts, the defendant was told by Army officials that the food service supplies were already built into an existing contract and thus a contract with Company A for such was not possible. The defendant subsequently reported this information to the president of Company A.

        n.    During or about the first week in December 2005, the president of Company A contacted the defendant and asked him to come alone to the office of Company A in Kuwait City. The defendant did so. There the president of Company A handed to the defendant a plastic bag in which was an envelope containing $50,000 in U.S. $100 bills. The president of Company A told the defendant that this was his payment for helping the president out in the event that Company A received a contract for food service supplies.

17

o.    The defendant accepted the $50,000 cash from the president of Company A, but told him that Company A would not be receiving a contract for the food service supplies because they were already covered by the LOGCAP III contract. The president of Company A encouraged the defendant to keep trying to help him obtain a contract with the Army.

p.    The defendant left Company A's premises with the $50,000 cash, and stored most of the money at Camp Arifjan until his departure from Kuwait on or about December 13, 2005. Prior to December 13, 2005, the defendant either spent or mailed to the United States about $10,000 of the $50,000 cash that he received from Company A's president.

q.    The defendant left Kuwait on or about December 13, 2005 by contract commercial airline. The defendant concealed on is person and in his hand-carried belongings approximately $40,000 of the cash that he had received from Company A's president.

r.    On December 14, 2005, the defendant arrived at Dover, Delaware, and entered the United States with the $40,000 still concealed on his person and in his hand-carried belongings. There he presented to a U.S. Customs official a "Customs Declaration" form that he had completed. In response to item 12 on the Customs Declaration, the defendant had checked the "No" box following the

18

statement, "I am (We are) carrying currency or monetary instruments over $10,000 U.S., or foreign equivalent." The defendant intentionally checked this "No" box in order to falsely declare to U.S. Customs officials that he was not carrying over $10,000 in U.S. currency, and to conceal the fact that he was actually carrying approximately $40,000 cash in $100 bills on his person and in his hand-carried belongings.

s.    The defendant acknowledges that his above-summarized conduct constituted bribery and the smuggling of U.S. currency, and was against the law.

## FORFEITURE

25.    The defendant acknowledges and understands that he has the right to contest, dispute, and defend against the criminal forfeiture action alleged in Count Three of the Information. Knowing all of this, and in consideration for the concessions made by the government herein, including but not limited to the defendant receiving the opportunity to cooperate with the government so as to possibly be considered by the government for a reduced sentence, the defendant hereby stipulates and agrees to the entry of a money judgment against him and in favor of the United States in the amount of $50,000.00, that being the total amount of proceeds involved in or traceable to the foregoing offenses, and to the forfeiture of the following property to the United States, the proceeds from the sale of which shall be applied to said money judgment:

19

     a.     One ladies' two-tone Rolex watch in green box;

     b.     One each matching ladies' and mens' imitation Cartier watches in white and green box;

     c.     One Ablux ladies' gold watch with matching bracelet in red box;

     d.     One ladies' gold-tone CQ Citron watch with necklace and earrings in blue velvet box;

     e.     One ladies' silver-tone CQ Citron watch with necklace and earrings in red velvet box;

     f.     One black-faced Omax mens' watch;

     g.     One set pottery salt and pepper shakers in wire rack;

     h.     One set wooden salt and pepper shakers; and

     i.     One animal-skin shield.

## EFFECT OF VIOLATION OF AGREEMENT

26.    The defendant agrees that if the defendant violates the terms of this Plea Agreement, the United States has the option to declare the Plea Agreement null and void. In the event the United States exercises its option to declare the Plea Agreement null and void, the United States will be completely released from all of its obligations under this Plea Agreement and the United States will be free to seek to vacate the defendant's conviction and/sentence, and to reinstate any previously dismissed charges against the defendant or to seek the defendant's resentencing. However, in the event the United States exercises its option to declare the Plea

Agreement null and void, the defendant will not be allowed to withdraw from any previously accepted guilty plea. The defendant also agrees to waive any and all double jeopardy rights, and the applicable statute of limitations should the United States seek to reinstate any charges against the defendant or seek to have the defendant resentenced.

27.    Whether or not the defendant has violated the terms of the Plea Agreement shall be determined by the Court. The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the Plea Agreement.

## WAIVER OF CONSTITUTIONAL RIGHTS

28.    The defendant understands that by pleading guilty the defendant surrenders the following rights, among others:

a.    <u>The right to plead not guilty or persist in the plea of not guilty if already made</u>. If the defendant persisted in a plea of not guilty to the charges the defendant would have the right to a public and speedy trial.

b.    <u>The right to a trial by jury</u>. The defendant has an absolute right to a jury trial. The jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the

evidence, it was persuaded that the United States had met its burden of proving the defendant guilty beyond a reasonable doubt. The defendant could also ask for a trial by the Judge instead of a trial by a jury.

        c.      <u>The right to confront and cross-examine adverse witnesses</u>. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to see and hear those government witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf. If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the Court.

        d.      <u>The right against compelled self-incrimination</u>. At a trial, the defendant would have a privilege against self-incrimination so that the defendant could decline to testify, and no inference of guilt could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

        e.      <u>Venue</u>. To the extent that any venue issues may exist with respect to the charges alleged in the Information, the defendant hereby knowingly and specifically waives any and all rights to challenge his prosecution in the Central

District of Illinois on the basis of venue, that is, that the charges against him were unconstitutionally or otherwise improperly brought in the Central District of Illinois instead of being filed in another federal district. The defendant hereby acknowledges and understands that absent this waiver, he might have the right to challenge his prosecution on the basis of venue. The defendant understands that Article III, Section 2, Clause 3 of the United States Constitution provides that "Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed;" that the Sixth Amendment calls for trial "by an impartial jury of the State and district wherein the crime shall have been committed;" and that Rule 18 of the Federal Rules of Criminal Procedure establishes that "prosecution shall be had in a district in which the offense was committed." Recognizing all of the foregoing, the defendant hereby knowingly and voluntarily waives venue.

29. The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorney has explained to the defendant those rights and the consequences of the waiver of those rights.

**AGREED:**

**Defendant's Attorney:**

30.    I have discussed this Plea Agreement fully with my client, and I am satisfied that my client fully understands its contents and terms. No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this written Plea Agreement. I have reviewed with my client United States Sentencing Guidelines Sections 1B1.3 and 1B1.4 (relevant conduct).

Date: 2 | 9 | 0 7

S/Donovan Robertson

DONOVAN S. ROBERTSON, ESQ.
Attorney for Peleti Peleti, Jr.

**Defendant:**

31.    I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand this Agreement, and I agree to it voluntarily and of my own free will. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this Agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, expressed or implied, to influence me to plead guilty other than those stated in this written Plea Agreement. I am satisfied

24

with the legal services provided by my attorney. I understand that by signing below I am stating I agree with everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

Date: _2 | 9 | 0 7_                S/Peleti Peleti Jr.
_____
                                  PELETI PELETI, JR.
                                  Defendant

**United States:**

32.    On behalf of the United States of America, I accept and agree to this Plea Agreement.

Date: _2/9/07_                RODGER A. HEATON
                                  UNITED STATES ATTORNEY

              by:    S/Jeffrey Lang
_____
                     JEFFREY B. LANG
                     SUPV. ASSISTANT U.S. ATTORNEY
                     1830 Second Avenue, Suite 320
                     Rock Island, Illinois 61201
                     Tel: (309) 793-5884
                     Fax: (309) 793-5895



**U.S. Department of Justice**

*United States Attorney*
*Central District of Illinois*
*Headquarters Office*
*Springfield, Illinois*

---

*Rodger A. Heaton*
*United States Attorney*

*Reply to:*
*Rock Island Branch Office*
*1830 Second Avenue, Suite 320*
*Rock Island, Illinois 61201*
*(309)793-5884*
*FAX: (309)793-5895*

August 10, 2006

Donovan C. Robertson, Esq.
100 17th Street, Suite 405
Rock Island, IL 61201

Re:    Cooperation Agreement for
Peleti Peleti, Jr.

Dear Mr. Robertson:

It is my understanding that your client, Peleti Peleti, Jr., desires to cooperate with the government in its efforts to enforce federal law on the condition that his statements are protected by a grant of use immunity by the federal government. This letter is intended as a grant of conditional use immunity.

To avoid any misunderstanding, the specific terms of this grant of immunity are as follows:

1.  The federal government agrees that no statement made or information provided pursuant to this agreement will be directly used as material evidence against your client in any federal criminal case, except for (1) prosecutions for making false statements or perjury during statements made pursuant to this agreement; (2) prosecutions for felony offenses involving the actual or threatened use of violence, and attempts and conspiracies to commit such, (3) use as impeachment or rebuttal evidence should your client subsequently testify or take a factual position contrary to the information that he provides pursuant to this agreement, (4) forfeiture proceedings, and (5) supervision revocation proceedings. The government will remain free to discharge its duty to the court, if such duty exists under the circumstances, by informing the court of any information that your client provides. The court will also be notified that such information was obtained pursuant to this grant of use immunity.

2.  Your client agrees that any statement made or information provided pursuant to this agreement may be directly or indirectly used to obtain leads to other evidence, which evidence may be used against him in any criminal, civil, forfeiture, or administrative hearing, trial or other proceeding, including the sentencing hearing. It is intended by the government and acknowledged by your client that this provision eliminates the need for a <u>Kastigar</u> hearing wherein, absent this provision, the government would be required to prove that evidence being offered was not obtained through information provided by your client while cooperating with the government.

GOVERNMENT
EXHIBIT

A

3.  Your client agrees that he will provide <u>complete</u> and <u>truthful</u> information to law enforcement officials regarding everything he knows or has reason to believe about the criminal conduct of himself, if any, and that of other persons. Your client also agrees to produce any and all documents and physical evidence of any kind in his possession or under his control which relate to the information that he provides.

4.  Your client agrees to provide <u>complete</u> and <u>truthful</u> testimony to any grand jury, trial jury, or judge in any proceeding in which he may be called to testify by the government.

5.  You and your client further acknowledge and agree that the federal government's grant of use immunity herein is entirely conditioned upon your client's complete compliance with each and every term of this agreement. Should your client knowingly make any materially false statement or omission in providing information or testimony under this agreement, the federal government will be entitled to use his statements and evidence that he provides to institute and support a criminal prosecution for any offense as well as a prosecution for giving false statements and perjury.

6.  For instance, your client must neither conceal or minimize his own actions or involvement in any offense, nor conceal, minimize, fabricate, or exaggerate anyone else's actions or involvement in any offense. He must be completely truthful about the facts whatever those may be.

7.  Your client understands that the offenses of giving false statements and of perjury are felonies, each instance of which is punishable by up to five years in prison plus a $250,000 fine.

8.  Your client hereby agrees to undergo a polygraph examination to confirm any or all of the information that he provides pursuant to this cooperation agreement.

9.  Any material breach of any provision of this agreement by your client will void this agreement in its entirety and will release the federal government from any obligation under this agreement. Any controversy concerning whether your client has knowingly made any materially false statement or omission during his cooperation, or has otherwise materially breached this cooperation agreement, shall be brought to the attention of, and determined by, the U.S. District Court.

10. At this time the government is not making, and has not made, any promise or commitment of any kind to your client regarding the prosecution of any offense or the sentence in any case.

11. This agreement is limited to the statements made and given by your client after the execution of this cooperation agreement and does not apply to statements, if any, given by him prior thereto.

12. This letter embodies the entirety of the federal government's immunity agreement with your client. No other promise or agreement exists between your client and the federal government regarding such immunity.

Very truly yours,

RODGER A. HEATON
UNITED STATES ATTORNEY

By:    S/Jeffrey Lang

JEFFREY B. LANG
SUPERVISORY ASSISTANT U.S ATTORNEY

We have read this letter entirely, and we understand and completely agree to the above terms. No promises have been made other than those stated in this letter regarding cooperation and use immunity.

S/Peleti Peleti Jr.
Peleti Peleti, Jr.                                    Date: August 14, 2006

S/Donovan Robertson
Donovan S. Robertson                          Date: August 14, 2006
Attorney for Peleti Peleti, Jr.

Page 3 of 3