**E-FILED**
Friday, 20 July, 2007 06:52:48 PM
Clerk, U.S. District Court, ILCD

DAVID MICHAEL, CA State Bar # 74031
414 Gough Street, Suite 2
San Francisco, CA
Telephone: (415) 621-4500
Facimile: (877) 538-6220

LEWIS O. ROMERO, CA State Bar # 197231
PAUL L. ALAGA, CA State Bar # 221165
885 Bryant Street Second Floor
San Francisco CA 94103
Telephone: (415) 581-0885
Facsimile: (415) 581-0887

Attorneys for Defendant, PELETI PELETI JR.


UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 06-40117 MMM JAG |
| Plaintiff, | NOTICE OF MOTION AND MOTION TO WITHDRAW GUILTY PLEA (Fed. R. Crim. P. 11(d)(2(B)) |
| vs. | |
| PELETI PELETI JR., a/k/a "Pete," | Date: August 17, 2007 Time: 11:00 a.m. Dept: Hon. Michael M. Mihm |
| Defendant. _____ / | |

TO: THE HONORABLE JUDGE MICHAEL M. MIHM AND TO ASSISTANT UNITED STATES ATTORNEY JEFFERY LANG:

PLEASE TAKE NOTICE, that Defendant Peleti Peleti, Jr., on the above date and time and in the above noted department, will and hereby does move this Court for an order permitting the defendant to withdraw his plea of guilty, previously entered in this Court on 9 February 2007.

This motion is made pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure based upon fair and just reasons, which include the fact that there does not exist a factual basis for the charges against defendant and that Peleti's former attorney provided insufficient legal

representation due to said attorney's failure to investigate and ascertain the material facts and law of this case.

The motion will be based on this Notice of Motion, the Memorandum of Law filed in support of said Motion, the Declarations of Peleti Peleti, Jr., filed herein, the pleadings and records filed in this case, and on such other evidence that will be presented to the Court at the time of any hearing on said Motion

DATED: 20 July 2007

Respectfully submitted,

s/DAVID M. MICHAEL_____
DAVID M. MICHAEL

s/LEWIS O. ROMERO _____
LEWIS O. ROMERO

s/PAUL L. ALAGA      _____
PAUL L. ALALGA

Attorneys for Defendant PELETI PELETI, Jr.

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that, on 20 July 2007, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey B. Lang, Esq.
Supv. Assistant United States Attorney
1830 Second Avenue,
Rock Island, IL 61201

jeffrey.lang2@usdoj.gov

Donovan S. Robertson, Esq.
100 17th Street, Suite 405
Rock Island, IL 61201

drobertson@cgslawfirm.com

s/PAUL L. ALAGA
PAUL L. ALALGA

DAVID M. MICHAEL, CA State Bar # 74031
414 Gough Street, Suite Two
San Francisco, CA
Telephone: (415) 621-4500
Facimile:  (877) 538-6220

LEWIS O. ROMERO, CA State Bar # 197231
PAUL L. ALAGA, CA State Bar # 221165
885 Bryant Street Second Floor
San Francisco CA 94103
Telephone: (415) 581-0885
Facsimile: (415) 581-0887

Attorneys for Defendant Peleti Peleti

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PELETI PELETI JR., a/k/a "Pete,"<br><br>Defendant.        / | Case No. 06-40117 MMM JAG<br><br>MEMORANDUM OF LAW  IN SUPPORT OF MOTION TO WITHDRAW PLEA<br><br>Date:  August 17, 2007<br>Time:  11:00 a.m.<br>Dept:  Hon. Michael M. Mihm |

**Background**

This Memorandum is submitted in support of the Motion of defendant Peleti Peleti, Jr., for an Order pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure to allow the defendant in this matter to withdraw his pleas of guilty.

**Facts of the Case**

The following facts are those as represented in an investigative statement made by Defendant Peleti, aGrand Jury transcript , a Plea Hearing transcript, and the supporting

declarations, all a part of the record in this case: [1]

1.  On July 24, 2006, defendant Peleti Peleti, Jr., signed a four page statement for the military's Defense Criminal Investigative Service. Exhibit A, attached hereto. On August 14, 2006, Peleti was granted limited immunity in writing by the office of the U.S. Attorney. Exhibit B, attached hereto. On August 16, 2006, under a grant of immunity, Peleti testified before a Grand Jury in Peoria, Illinois. Exhibit C, attached hereto. On January 12, 2007, the office of the U.S. Attorney for the Central District of Illinois filed an Information with this Court, charging Peleti with three counts of violating federal law related to Peleti's earlier statements. Exhibit D, attached hereto. On February 9, 2007, in a plea hearing, Peleti pled guilty to all 3 counts of the previously filed Information. Exhibit E, attached hereto. The plea hearing was held pursuant to a Plea Agreement and Stipulation of Facts, filed that same date on February 9, 2007. Exhibit F, attached hereto

2.  Count One of the Information alleges that defendant Peleti, a Chief Warrant Officer acting for and on behalf of the United States Department of the Army, received $50,000 in United States Currency, in return for "an effort to steer a U.S. Army contract for food service supplies from an existing government contractor under the LOGCAPP III prime contract, to a Kuwait business referred to as 'Company A' all in violation of Title 18 United States Code, Section §201(b)(2)(A)."

3.  Count Two of the Information alleges that defendant Peleti "with intent to evade a currency reporting requirement under Title 312, United States Code Section 5316, knowingly concealed more than $10,000 in currency....and knowingly transport said concealed currency from a place outside the United States to...Dover, Delaware, all in violation of Title 31, United States Code

---

[1] The Grand Jury testimony and Plea Hearing transcripts aid this Court in determining the relevant issues here. But, it should be noted that neither record can be utilized to establish at trial any element of the government's case in any event. F.R.Crim P.,Rule 11(f); Federal Rule of Evidence 410; Exhibit B, Immunity Agreement of August 14, 2006.

Section 5332."

4.  Count Three is a forfeiture allegation referencing the funds set out Count One.

5.  The undisputed facts in this case show that in the fall of 2005, Chief Warrant Officer Peleti Peleti (W4) was a Theatre Food Adviser in the US Army in Kuwait, with the responsibility for monitoring food contracts, including contracts for paper products and plastic utensils.  Peleti, as part of the Menu Board composed of approximately 35 individuals, had recommended to the Army Center of Excellence under the Quartermaster School in Fort Lee Virginia, that the Army utilize the products provided by a Mr. Ibrihim.(Grand Jury Transcript (hereinafter referred to as "GJT"), 20: 7-16; 35: 10-15; Declaration of Peleti Peleti, Jr. (hereinafter referred to as "Peleti Dec."), p. 2, ln. 7.   The recommendation was made because the products offered by Mr. Ibrihim were "a lot more sturdier" than those currently in use and for no other reason (GJT 22: 6-16; 37: 15-19). Defendant Peleti testified that there were no kickbacks (GJT 30:1)

6.     The Army Center of Excellence's response to the recommendation by Peleti was negative because the Army had an existing contract with Halliburton subsidiary Kellogg Brown and Root. Defendant Peleti testified that, despite his belief that Ibrihim's products were superior, the contract was already under LOGCAP, and any contract with Ibrihim was not going to happen. (GJT 36: 6-25; 37: 1-4).  Most importantly, before Peleti had any idea that Ibrihim would give him any money, Peleti told Ibrihim that the contract could not go to Ibrihim because it was a part of a contract for another company and that there was no way to get around it.  (GJT 37: 20-24; 40: 7-14).  It was only after Peleti told Ibrihim that there was no way he could go forward with any contract for Ibrihim's products that Ibrihim allegedly gave Peleti a bag with $50,000 in U.S.

currency in it. (GJT 39: 2-15)

7.   On December 15, 2005, five days after Peleti met with Ibrihim, Peleti's official duties with Theatre Food in the Mid-East concluded because his deployment to Kuwait ended, and he returned to the United States for further duties there.

8.      In his Grand Jury testimony, Peleti states that he had one phone conversation with Ibrihim after his return to the United States, in which, Ibrihim asked him how it was going, Peleti told Ibrihim "you tell me, I'm not there" and Ibrihim told Peleti that things were not looking good. (GJT 47: 9-15).  At no point in this conversation does Peleti say he has the power to take or will take, or attempt to take any action on behalf of Ibrihim with regard to the procurement of paper products or plastic utensils for the military.

9.      During Peleti's Grand Jury testimony, on the topic of a customs declaration defendant may have filled out upon his return regarding any cash he was transporting, defendant testified "I couldn't tell you right now what I wrote down." (GJT 43: 2-3).

10.      Prior to his Grand Jury testimony, Peleti had signed a four page statement on July 24, 2006 for the military's Defense Criminal Investigative Service.  Exhibit A.  In this statement, defendant admitted receiving $50,000 from Ibrihim.  The statement contains nothing further in that regards.  It contains nothing regarding conversations between defendant and Ibrihim and nothing regarding any actions by defendant on behalf of Ibrihim.  Furthermore, the statement contains nothing with regard to the transport of any funds into the United States.

11.      Peleti received his subpoena to testify before the Grand Jury on August 2, 2006.  That Grand Jury hearing was to be held in Peoria, Illinois, on August 16, 2006.  Peleti first met attorney Donovan Robertson on August 14, 2006, only two days before his Grand Jury appearance.  Prior to meeting with Peleti, attorney Robertson had already set up a meeting with

AUSA Jeffrey Lang, in order for Peleti to sign a limited immunity agreement. Exhibit B. (Peleti Dec. p 4.)

12.     On August 14, 2006, after a  brief initial meeting with defendant,  Mr. Robertson escorted defendant to meet with Mr. Lang and three federal agents.   (Peleti Dec. p. 2-3)  The immunity agreement was first presented to defendant at that meeting.  Any and all discussion with regard to this immunity agreement, and any and all advice and counsel provided by attorney Robertson to defendant regarding that immunity agreement took place in the presence and with the participation of the assist United States Attorney Jeffrey Lang and three federal agents. (Peleti Dec. p. 2-3)

13.     Defendant signed the immunity agreement on advice of counsel, and was then immediately interrogated by the three federal agents for approximately 6 hours.  Defendant fully cooperated with the government in these discussions and in his full testimony before the Grand Jury on August 16, 2007.  In addition, Peleti traveled to Rock Island, Ill. in November, 2006 for 4 to 5 days of additional interrogation, as well as further interrogation by federal agents following defendant's entry of a plea of guilty in February of 2007.

14.     The immunity agreement states that all of Defendant Peleti's statement or information provided to the grand jury and during any of his interrogations by the government are inadmissible in the government's case in chief.  Exhibit B.

15.     On February 7, 2007, at defendant's plea hearing, defendant Peleti's responses to the Court's query pursuant to Rule 11 was consistent with defendant's Grant Jury testimony.  With the Honorable Michael M. Mihm presiding, on February 9, 2007 the following exchange occurred:

"Q.  So you told him you were going to take the $50,000 and do nothing in return.
A:  Yes.

Q. And they gave it to you anyway?

A: That's correct.

Q: "I don't think we have a plea here if this is the case."

(Plea Hearing Transcript, <u>Exhibit E</u>, (hereinafter "PHT" ) 31: 5-6 )

16.     At the plea colloquy, despite the Court's misgivings, attorney Robertson urged the court to accept defendant's plea by erroneously stating that a violation 201(b)(2)(A) occurs if the receiver simply understood "*the intent of the person giving the money {is} to influence the official act*." (PHT 35: 2-3).

17.  Assistant US Attorney Lang also urged the Court to accept Peleti's plea by misrepresented 18 USC 201(b)(2)(A) and stating that a violation of Section 201(b)(2)(A) occurs based solely upon the giver's intent; and the communication of that intent.  Assistant US attorney Lang stated, "[I]t's sufficient if the defendant knew that the thing of value was offered with the intent to influence his official action." (PHT 35: 16-18).

18.     Based upon these misrepresentations of the law, the Court continued with the plea hearing and asked for assistant US Attorney's proffer of proof.  GJS 39-42.  All the statements made by Mr. Lang in his proffer were garnered from defendant's grand jury testimony, and are not admissible in the government's case in chief.  In Mr. Lang's proffer, he cites statements by third parties.  To date, the government has not produced  through discovery or any other means, admissible evidence independent of defendant's immunized testimony to the Grand Jury in support of either Clunt One or Count Two.

19.     Based upon attorneys Lang and Robertson's misrepresentation of the law, and of the proffer by attorney Lang replete with inadmissible evidence, the Court accepted defendant's guilty pleas.

20.   Following defendant's plea of guilty on February 9, 2007, attorney Robertson said to

defendant outside of court, "I think we made a fundamental mistake," and offered to file a motion to withdraw defendant's guilty plea. (Peleti Dec. 2: 9-11)

21. Attorney Robertson failed to prepare a motion to withdraw, and urged defendant to continue with his strategy of cooperation, stating that if defendant continued, Robertson would make a motion to reduce defendant's sentence. (Peleti Dec. 2: 9-11)

22. On June 4, 2007, Peleti, through attorney Robertson, moved to continue the sentencing hearing, which was granted. Attorneys Lewis O. Romero and Paul L. Alaga filed notices of appearance on behalf of Mr. Peleti on June 26, 2007.

### Grounds for Withdrawal

A defendant has a limited right to withdraw a guilty plea. *United States v. Schilling*, 142 F.3d 388, 398 (7th Cir. 1998). Prior to sentencing a district court may permit withdrawal if presented with a "fair and just" reason, Fed. R. Crim. P. 32(e); *United States v. Abdul*, 75 F.3d 327, 329 (7th Cir. 1996), but the burden of justifying relief rests with the defendant. *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992); *United States v. Underwood, 174 F. 3d 850, 852(7th Cir. 1999); See, also, United States v. Lundy, 484 F. 3d 480,*

As set forth herein, defendant Peleti has fair and just reasons for withdrawing the previously entered pleas of guilty in this matter and, therefore moves pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure for a withdrawal of that previously entered plea of guilty as to each count of the Information.

## I. THERE WAS NO FACTUAL BASIS FOR DEFENDANT'S GUILTY PLEAS

### a. The Requirements of Rule 11.

Rule 11(g)of the Federal Rules of Criminal Procedure, requires that a "verbatim record of the proceedings at which the defendant enters a plea shall be made, and . . . (this) record shall

include . . . the inquiry into the accuracy of a guilty plea." In addition, the mandate of the

Supreme Court in *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495 (1971), require that "the

judge (shall) develop on the record the factual basis for the plea."

> In addition we interpret the rule to require that a district judge shall not accept a
> guilty plea until he has determined that there is a factual basis for the plea. This
> court only recently had occasion to note in discussing the purpose for the factual
> basis requirement that "the judge must determine "that the conduct defendant
> admits constitutes the offense . . . to which (he) has pleaded guilty', a requirement
> designed to "protect a defendant who is in the position of pleading voluntarily
> with an understanding of the nature of the charge but without realizing that his
> conduct does not actually fall within that charge.

*Carreon v. United States,* 578 F.2d 176, 178 (7th Cir. 1978);*United States v. Wetterlin,* 583 F.2d

346, 352-353 (7th Cir. 1978); see, also, *U.S. v. Carr*, 271 F.3d 172 (7th Cir, 2001). (Fed. R.

Crim. P.11(f) provides that notwithstanding the acceptance of a plea of guilty, the court should

not enter a judgment upon such a plea without making such inquiry as shall satisfy it that there is

a factual basis for the plea....The district court must assure itself simply that the conduct to

which the defendant admits is in fact an offense under the statutory provision under which he is

pleading guilty). If there is no factual basis for the plea, then the Court cannot accept a

defendant's guilty plea and that failure of a factual basis constitutes a fair and just reason for the

Court to set aside a defendant's plea.

### b. The Plea as to Count One of the Information

In this case, it is significant that this Court, at the plea colloquy, was initially suspicions

and concerned that there did not exist a factual basis for the plea entered by Peleti to Count One

of the Information, a violation of Title 18 United States Code, Section §201(b)(2)(A). In fact, as

will be shown here, the Court's suspicions were correct.

In order to be guilty of a violation of Section §201(b)(2)(A), with which Peleti is charged,

certain elements of that offense must be present. While Section 201(b)(1) focuses on the intent

of the giver , section 201(b)(2) focuses on the intent of the receiver. *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404 (1999). Section 201(b)(2)(A) provides that a public official commits bribery when he "corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value…in return for being influenced in the performance of any official act[.]" To convict defendant on the charged offense of soliciting a bribe, it was necessary for the United States to prove three elements: (1) that he demanded, sought, or received something of value as described in the indictment, (2) that he was, at that time, a public official of the United States, or was acting on behalf of the United States, and (3) that he demanded, sought, or received the item of value corruptly in return for being influenced in the performance of any official act. *Id; see also United State v. Quinn*, 359 F.3d 666, 673 (4th Circuit, 2004).

In order for an individual to be guilty of this section a jury must find that the defendant acted corruptly. *United States v. Gatling, 96 F.3d 1511, 1522 (DC Circuit, 1996).* Corruptly "means that the defendant accepts money with the specific intent of performing an official act in return." *Id.* This section "requires…<u>intent to be influenced</u> in an official act…In other words, for bribery there must be a *quid pro quo*-a specific intent to give or receive something of value *in exchange* for an official act." *United States v. Sun-Diamond Growers of Cal, supra., 526 U.S. at 404-405*; underlined emphasis added). As such, the payment at issue "must actually influence the act or omission." *Valdes v. United States,*475 F.3d 1319, 1327 (7th Circuit, 2007).

The above elements are consistent with the crime of bribery in any criminal setting, which requires the criminal intent of the person accepting the bribe and that the person accepting the alleged bribe be able to perform some "official act" as part of the acceptance of that bribe.

> Bribery imports the notion of some more or less specific quid pro quo for which
> the gift or contribution is offered or accepted……. There must be more specific

knowledge of **a definite official act** for which the contributor intends to compensate before an official's action crosses the line between guilt and innocence..........This requirement of criminal intent would, of course, be satisfied if the jury were to find a "course of conduct of favors and gifts flowing" to a public official in exchange for a **pattern of official actions favorable to the donor** even though no particular gift or favor is directly connected to any particular official act...... [T]he benefit must be given in exchange or as compensation for official action and not merely as an unconditional gift with the hope that a favorable business climate will result in order to be classified as bribery.

*United States v. Arthur*, 544 F.2d 730, 734-735 (4th Cir. 1976)

The plea colloquy, itself, reveals that there was no factual basis for Peleti's plea to any of

the counts in the Information and the Court's initial suspicions as to that were well founded.

Initially, the Court advised Peleti of the elements of the charge that the government would be

required to establish:

THE COURT:  Concerning Count 1, the receiving a bribe count, the Government would be required to prove, first, that at the time in question you were a public official.  Second, that you corruptly accepted or received something of value personally. And, third, that you knew that what you accepted or received was accepted or received in return for being influenced in the performance of some official act. Do you understand what they would have to prove concerning Count 1?

A Yes, Your Honor.

PHT 25: 6-19

Later in the colloquy, the Court determined that these elements were not satisfied under the facts

of the case.

THE COURT Q You had another meeting with who?
A The contractor, Company A.
Q And they provided you with what funds?
A The $50,000.
Q And what was that for? What were you supposed to do in return for that?
A Well, we had a discussion that he wanted to get the paper products contract and I informed him that there was no way. Well, at that last meeting we had, that's when he provided me with the cash.
Q Well, I'll ask the question again. You took the cash; is that correct?
A That's correct.
Q And under what circumstances? What did you tell them you were going to do for the $50,000?
A Your Honor, I did not tell them that I was going to give them the contract because I already

knew, one, that it was already in place and he was just one of the many subcontractors, so it would be a joint effort, not just a single one contractor.

Q So you told him you were going to take the $50,000 and do nothing in return?

A Yes.

Q And they gave it to you anyway?

A That's correct.

THE COURT: I don't think we have a plea here if this is the case.

PHT 30: 5-25, 31: 1-6

At the erroneous insistence by the government that it was not necessary that the

defendant intended to be influenced when he received the money so long as he believed at the

time that he took the money that the president of Company A still wanted him to try to get the

contract, (PHT 31: 7-13), the Court continued the inquiry:

THE COURT: [I]t seems to me there has to be some showing here that he believed that he was being given this money by the person from Company A for the purpose of influencing his official conduct. The only thing he has told me so far is that they knew exactly that he was not in a position to do that. So maybe you can --

A Yes, Your Honor, the intent - the intent, I believed that the - Company A, he wanted the contract. We did discuss it. We did discuss it. This was prior before I received the cash. I went back to him and told him and said there's no way because I had made phone calls and --

Q Let me stop you there for a minute. You took the money, right?

A Yes, Your Honor.

Q And then you left?

A That's correct. I left like two weeks after I received it.

Q But what I'm really focusing on right now is what happened as of the time you left the first time. You said you came back and told him that you couldn't do it?

A The original intent was to see if he can get that contract, paper product contract, which I did. I went back and talked to my sources.

Q You took the money?

A No. This is after we had the discussion in the first meeting. I went back to him and told him there's no way because it's already in the contract, under the LOGCAP

contract. Now the intent originally was try to get him the contract, yes.

Q I'm talking about when he gave you the money.

A When he gave me the money, I already told him that there was no way, no way he could receive that contract. It was already in place. I knew that and I had confirmed that. And our last meeting is when he gave me the cash. So, yes, originally the intent was to try to get him the contract, but it did not come through.

Q But the question remains then, if he knew at the time that he gave you the money that there was no hope, no chance, no possibility that you could somehow influence the decision, I don't understand why the money was given to you.

A Correct. And that's what I had told the agents, yes. The intent was for him to receive that

contract, paper products and flatware contract, but at our last meeting I told him there was no way. Now he did make a comment, "Well, see if you can continue." Well, because I left Kuwait, I was not now the theater food advisor, so, therefore, I had stated to him that there was no way he could receive the contract. So, yes, he did give me the money and I did take it.

PHT32: 21-25, 33: 1-25, 34: 1-22

Then, Peleti's own counsel joined with the government in misrepresenting to the Court

the requirements for establishing the elements of the offense.

MR. ROBERTSON: And I think -- you know, again, for what it's worth, I think the relevant question at that point is when the money is received, did the defendant understand that it was given to him with the intent on the part of the person giving the money to influence the official act. In other words --
THE COURT: Yes.
MR. ROBERTSON: In other words, I think that's the question, Your Honor. Maybe I phrased it --
THE COURT: I agree with you. I'm not satisfied that's been -- I'm not convinced that's been satisfied.

PHT 34: 23-25, 35: 1-8

Clearly, with unvarnished facts that do not support the ability of the government to

establish the elements of an offence under section §201(b)(2)(A), with the Court's own doubts

and suspicions as to the elements of the offense, with Peleti's honest representation of the facts

in a way that suggests that he is, finally, able to tell the Court the true story and its a story that

points to innocence, and with the effective isolation of Peleti by both the government and his

own attorney at the plea hearing, this matter clearly sets forth a "fair and just" reason for this

court to grant Peleti's motion to set aside his earlier plea of guilty on the grounds that the

elements of the offense necessary for a plea of guilty were not established by the government.

Fed. R. Crim. P. 32(e); *United States v. Abdul*, 75 F.3d 327, 329 (7th Cir. 1996).

Surely, this is a case where this court should protect Mr. Peleti, who was, at the plea

hearing, in the position of pleading "voluntarily with an understanding of the nature of the charge

but without realizing that his conduct does not actually fall within that charge." *Carreon v.*

*United States,* 578 F.2d 176, 178 (7th Cir. 1978); *United States v. Wetterlin*, 583 F.2d 346, 352-

353(7th Cir. 1978).

### c.    The Plea as to Count Two of the Information

There was also no factual basis for defendant's guilty plea to Count Two of the

Information. The government provided no documentary evidence that Peleti brought in excess

of $10,000 into the country without declaring it. The government provided no evidence that

Peleti executed a customs declaration stating that he did not possess more than $10,000 at the

time of his entry or that he was ever questioned by a customs officer regarding his entry.[3]

Furthermore, Peleti made no statement regarding that issue to the military investigators at the

time of his interview on July 25, 2006. Exhibit A. Defendant's immunized Grand Jury

testimony, even if admissible to establish a factual basis, was, at best, equivocal. Defendant

testified that he does not recall what he wrote down on his declaration when he entered the

country. (GJT 43: 2-3).[4]  In any event, that Grand Jury testimony cannot be used for such a

purpose.

## II.    PELETI'S THEN COUNSEL FAILED TO PROVIDE EFFECTIVE REPRESENTATION.

### a.  The Prevailing Law

A defendant may withdraw a guilty plea if the plea was based upon his attorney's

incompetence. *United State v. Lundy*, 484 F.3d 480, 485 (7th Circuit, 2007); *see also Hill v.*

*Lockhart* 474 U.S. 52, 57; *United States v. Wallace*, 276 F.3d 360, 366 (7th Circuit, 2002).  A

---

[3]  Informal investigations by the undersigned counsel have disclosed that, in regards to servicemen returning to Dover, MD and other military facilities from the Mideast front during this time, it is likely that no customs declaration is ever signed by those returning personnel.

[4]  The Immunity Agreement entered into by Peleti and the government makes inadmissible Peleti's testimony to the Grand Jury in the government's case in chief in the event of trial. Exhibit B

plea predicated upon the ineffective assistance of counsel amounts to a "fair and just reason" within the meaning of Rule 11(d). *United States v. Lundy, supra*, 276 F.3d at 485; *United States v. Cielowski* 410 F.3d 353, 358.

In order to establish a claim of ineffective assistance of counsel a defendant must demonstrate that (1), "counsel's representation fell below an objective standard of reasonableness" and (2) that but for counsel's incompetence "the defendant would not have pled guilty. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. Lundy, supra*, 276 F.3d at 485.

For counsel's performance to be "reasonableness" he must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington, supra*, 466 U.S. at 691; *see, e.g., Williams v. Taylor*, 529 U.S. 362, 393-98 (2000); *Lockett v. Anderson,* 230 F.3d 695, 711 (5th Cir. 2000). The Fifth Circuit has held that, "at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." *Nealy v. Cabana* 764 F.2d 1173, 1177 (5th Cir. 1985); *see, e.g., Rummel v. Estelle,* 590 F.2d 103, 104 (5th Cir. 1979) (per curiam). Significantly, "'*Strickland* does not require [the court] to defer to decisions that are uninformed by an adequate investigation into the controlling facts and law.'" *Locket v. Anderson, suprat*, 230 F.3d at 714 (quoting *United States v. Drones*, 218 F.3d 496, 500 (5th Cir. 2000), cert. denied, 121 S. Ct. 1095 (2001)); *see, e.g., Bouchillon v. Collins,* 907 F.2d 589, 597 (5th Cir. 1990) ("Tactical decisions must be made in the context of a reasonable amount of investigation, not in a vacuum.").

When analyzing whether counsel's performance fell below the objective standard of reasonable, counsel's actions must comport with the prevailing standards and norms. *Id.* at 688.

Specifically this entitles a defendant to "the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." *United States v. De Coster*, 487 F2d 1197, 1202 (D.C. Cir 1973). An attorney's performance must not fall below an objective standard of reasonableness ... under prevailing professionally norms. *Strickland supra*, at 688. In particular, the Sixth Amendment requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* at 691; *see, e.g., Hadley v. Groose,* 97 F.3d 1131, 1134 (8th Cir. 1996). The Fifth Circuit has made clear that "[s]ince investigation and preparation are the keys to effective representation . . . court-appointed counsel have a duty to interview potential witnesses and make an independent examination of the facts, circumstances, pleadings and laws involved." *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979) (per curiam). "[E]ffective representation when a guilty plea is contemplated to a great extant entails affirmative action on the part of counsel." Gallarelli v. United States, 441 F2d 1402, (3rd Cir. 1971). Counsel has a responsibility to "conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case...." ABA Standards for Criminal Justice, Prosecution Function and Defense Function Section 4-4.1 (3rd ed. 1993) As the articulated by *Hawkman v. Parratt*:

> a reasonably competent attorney will ordinarily conduct an in-depth investigation of the case which includes an independent interviewing of witnesses. Ford v. Parratt, supra, 638 F.2d at 1117. We explained in Ford that: 'when an unsubstantiated issue is deemed by both counsel and client to be significant enough to trigger the decision to plead guilty, then there arises a duty on the part of the defense counsel to obtain the specifics surrounding the key factual issue. Such a duty necessarily demands thorough investigation.

661, F2d 1161, 1118 (8th Cir. 1981). A defense attorney's failure to investigate the case falls short of effective counsel and a defendant's guilty plea cannot stand where such investigation

would have uncovered facts significantly strengthening a defendant's case. *Thomas v. Lockhard* 738 F.2d 304 (8th Cir. 1984) (failure to contact potential witnesses renders ineffective assistance of counsel 738 F. 2d at 308).

In determining whether counsel's performance was prejudicial in a motion to withdraw a plea, the defendant need only establish a "reasonable probability" that but for counsel's incompetence the defendant would not have plead guilty. *Strickland v. Washington, supra*, 466 U.S. at 694; *United States v. Lundy, supra* 276 F.3d at 485; *United States v. Cielowski, supra*, 410 F.3d at 458. The reasonable probability standard presents a "fairly low threshold" and is actually a lower standard then preponderance of the evidence. *Riggs v. Fairman*, 399 F.3d 1179, 1183 (9th Circuit, 2005); *Sanders v. Ratelle*, 21F.3d 1446, 1461 (9th Circuit, 1994). The reasonable probability standard is "a probability sufficient to undermine confidence in the outcome." (*Sanders v. Ratelle, supra; Strickland v. Washington, supra* 466 U.S. at 695.) The "preponderance standard was explicitly rejected in *Strickland* at 693." (*Sanders v. Ratelle, supra*.) "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." (*Strickland v. Washington, supra,* 466 U.S. at 694.)

### b. Defendant's Former Counsel Failed to Ascertain If Any Independent Evidence Existed to Support the Government's Case in Count One.

Defendant's July 25, 2006 statement to the Army investigators states that defendant received $50,000 cash. Nothing in the statement describes what defendant agreed to do in exchange, whether there was a quid pro quo, or that defendant ever agreed to, intended to, or actually took any official action in relation to those funds. In fact, the statement is completely devoid of any reference to any violation of a federal law. As set forth above, it is clear that there existed substantial issues with whether or not the actions of Peleti constituted any criminal

offence at all.  Certainly, the facts of this case are what gave this Court pause in considering whether or not to accept the plea.

What is striking about this case is that, because the evidence against Peleti was so meager, consisting only of his July 25, 2006 statement to the Army investigators, and because it would have been such a simple task to investigate the elements of a violation of 18 U.S.C. §201(b)(2)(A), the defense available to Peleti would have been easily ascertainable.  *Ford v. Paratti*, 538 F.2d 1115, 1118 (8th Cir. 1981) (counsel has a duty to ascertain the specifics regarding key facts).  Attorney Robertson's failure to do so and his failure to so advise Peleti of both the elements of the charge against him and his defenses fell below any objective standard of reasonableness and establishes a "reasonable probability" that but for counsel's failures, Peleti would not have pled guilty to that count. [5]

### c.  Defendant's Former Counsel Failed to Ascertain If Any Independent Evidence Existed to Support the Government's Case in Count Two.

As stated previously, the only existing evidence produced by the government, which was not covered by the government's grant of immunity, was the statement given by defendant on July 25, 2006.  That statement provides absolutely no information to support the government's case in chief for Count Two of the Information.  The July 24, 2006 statement contains no information at all with regards to a violation of 31 U.S.C. §5332, which makes it a crime to bring in cash in excess of $10,000 "with the intent to evade a currency reporting requirement under section 5316,".  Title 31 USC Section 5316 requires a report when an individual transports into the United States, more than $10,000 in cash.

---

[5]  It is worth noting that, at the plea hearing, attorney Robertson did not help his client's cause when he joined with the prosecution and misrepresented to the court that a violation of 201(b)(2)(A) occurs if the receiver simply understood "*the intent of the person giving the money {is} to influence the official act.*"  (PHT 35: 2-3).

There is no admissible evidence, at least none that the US Attorney has produced, as to what transpired when Defendant re-entered the United States via Dover Air Force Base, MD, in December, 2005.   The government has the burden of proving intent, and must show that defendant had knowledge of the reporting requirements, and intended to evade the reporting requirements.  The required report under Section 5316, is usually a customs report filed upon entry.  There's no evidence of the manner in which the military handled compliance with Section 5316.  "As a result, in order to prove willfulness, the Government should make some effort to bring the reporting requirement to the traveler's attention." *United States v San Juan* (1976, CA2 Vt) 545 F2d 314, 320.  There are no cases showing that a traveler has an independent duty to fill out the form required by Section 5316, where the government does not make those forms available, and does not inform the traveler of the requirement to complete the form.

In the present case, no such evidence has been proffered or produced.  Indeed, it is apparent that nobody, neither the government nor attorney Robertson had ever even saw the alleged customs declaration which was essential to the factual basis for the guilty plea to Count Two.  And, as stated, it is likely that servicemen returning from the Mideast did not, in fact, complete any customs declaration. See, fn 3, ante.

As counsel for defendant, attorney Robertson had a duty to investigate the facts of this alleged offense and to ascertain what evidence exists to support the government's case.  The complete lack of evidence to support this allegation by the government supports the conclusion that attorney Robertson's representation fell below any objective standard of reasonableness and establishes a "reasonable probability" that but for counsel's failures, Peleti would not have pled guilty to that count.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant defendant Peleti's motion to set aside his plea of guilty to the charges.

DATED: 20 July 2007

Respectfully submitted,

s/DAVID M. MICHAEL
DAVID M. MICHAEL

s/LEWIS O. ROMERO
LEWIS O. ROMERO

s/PAUL L. ALAGA
PAUL L. ALALGA

Attorneys for Defendant PELETI PELETI, Jr.

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that, on 20 July 2007, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey B. Lang, Esq.
Supv. Assistant United States Attorney
1830 Second Avenue,
Rock Island,  IL  61201

jeffrey.lang2@usdoj.gov

Donovan S. Robertson, Esq.
100 17th Street, Suite 405
Rock Island, IL  61201

drobertson@cgslawfirm.com

s/PAUL L. ALAGA
PAUL L. ALALGA