**E-FILED**
Friday, 20 July, 2007  07:13:31 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT E

1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

1

2

3

UNITED STATES OF AMERICA,          )
                                   )
4                      Plaintiff,  ) Criminal No.
                                   ) 06-40117
5           vs.                    ) Rock Island, Illinois
                                   ) February 9, 2007
6    PELETI PELETI, JR.            )
                                   )
7                      Defendant.  )

8

9

CHANGE OF PLEA HEARING

10

11                      BEFORE:

12          HONORABLE MICHAEL M. MIHM
            United States District Judge

13

14                   APPEARANCES:

15          JEFFREY LANG, ESQ.
       Assistant United States Attorney
16          1830 Second Avenue
        Rock Island, Illinois  61201
17   (Appeared on Behalf of the Government)

18

19          DONOVAN S. ROBERTSON, ESQ.
        100 Seventeenth Street, Suite 405
20          Rock Island, Illinois  61201
       (Appeared on Behalf of the Defendant)

21

22

23          Karen S. Hanna, C.S.R.
           U.S. District Court Reporter
24          Central District of Illinois
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer

1          THE COURT:  Good morning.  This is the case of

2    the United States of America vs. Peleti Peleti, Jr.,

3    criminal number 06-40117.  The defendant is in court

4    represented by his attorney, Donovan Robertson.  The

5    United States is represented by Jeff Lang.  The matter is

6    set today -- looks like for a waiver, filing and plea; is

7    that correct?

8          MR. ROBERTSON:  Correct.

9          THE COURT:  Mr. Robertson, would you approach

10   the podium with your client, please?  Sir, this process of

11   waiving indictment and entering a plea of guilty to an

12   information will involve your answering a number of

13   questions put to you while you're under oath, so please

14   raise your right hand to be sworn.

15                    **PELETI PELETI, JR.**

16   having been first duly sworn, was examined and

17   testified under oath as follows:

18                    **E X A M I N A T I O N**

19   BY THE COURT:

20   Q    Now that you have been sworn, do you understand that

21   your answers to my questions are subject to the penalties

22   of perjury or giving a false statement if you don't answer

23   truthfully?

24   A    Yes, Your Honor.

25   Q    What is your full name, sir?

1   A    Peleti Peleti, Jr.

2   Q    How old are you?

3   A    Forty-four.

4   Q    How far did you go in school?

5   A    Twenty-three and a half years, sir.

6   Q    And as I understand it, you're in the military; is

7   that correct?

8   A    Yes, sir.

9   Q    Are you currently or have you recently been under the

10   care of a physician or a psychiatrist or been hospitalized

11   or treated for narcotics addiction?

12   A    No, sir.

13   Q    Have you taken any drugs, medicine or pills or drunk

14   any alcoholic beverage in the past 24 hours?

15   A    No, sir.

16   Q    Have you been furnished with a copy of this

17   information?

18   A    The plea agreement, sir?

19   Q    The formal charges.

20   A    Yes, sir.

21   Q    This information charges in the introductory portion

22   that at the time in question, you were a U.S. Army Chief

23   Warrant Officer.  That you received a $50,000 cash bribe

24   for your efforts to try to steer U.S. Army contracts for

25   food service supplies from the existing contractor to a

1    Kuwait based company.  That you accepted the bribe while

2    you served in the U.S. Army Theatre Food Service -- as the

3    U.S. Army's Theatre Food Service Advisor for Kuwait, Iraq

4    and Afghanistan and, therefore, you were in a position to

5    influence the award and administration of Army food

6    service contracts.  It goes on to charge that thereafter

7    you smuggled approximately $40,000 of the cash bribe

8    proceeds from Kuwait into the United States.

9         The next section of the information is entitled

10    "The LOGCAP III Prime Contract".  The U.S. Army

11    administered a program to use civilian contractors to

12    provide the Army with additional means to support the

13    logistical needs of the U.S. military forces in wartime

14    and other operations.  One of the contracts the Army

15    awarded for that purpose was known as the Logistics Civil

16    Augmentation Program III or LOGCAP III prime contract.  It

17    was awarded by the U.S. Army's Operation Support Command

18    to the company now known as Kellogg, Brown & Root

19    Services, Inc., or KBR, on December 14 of 2001.  The

20    Operations Support Command was headquartered at the Rock

21    Island Arsenal at Rock Island, Illinois, within this

22    federal district.  The Army Field Support Command also

23    located at Rock Island Arsenal administered the LOGCAP III

24    prime contract.  Additionally, the Resource Management

25    Unit of the Field Support Command at the Rock Island

1    Arsenal managed the money for the LOGCAP III prime

2    contract, including obligating funding for the payment of

3    task orders under LOGCAP III.

4         That among the Army's requirements to be

5    accomplished through task orders issued under the prime

6    contract was the providing of dining facilities, meal

7    services and attendant supplies needed by soldiers to

8    dine, including paper products and plastic flatware.

9         That in or before December of 2005, food service

10   supplies, including paper products and plastic flatware,

11   were provided to the Army by KBR under the LOGCAP III

12   prime contract.

13        It charges that you were a Chief Warrant Officer

14   in the United States Army, served as the Army Theatre Food

15   Service Advisor for Kuwait, Iraq and Afghanistan.  You

16   were the advisor to the Commander on all facets of the

17   Army's food service program for soldiers in those

18   countries.  You were stationed at Camp Arifjan in Kuwait

19   and reported to command officials there.  That among your

20   duties was the monitoring of Army food service contracts

21   in Kuwait, Iraq and Afghanistan, including the acquisition

22   and distribution of food and related food service supplies

23   at Army bases and camps.

24        Count 1 charges receipt of a bribe, realleges

25   all of the introductory material and then goes on to

1  charge that during the first week of December, 2005, in

2  this federal district and elsewhere, including at Kuwait

3  City, you were a public official; that is, Chief Warrant

4  Officer of the U.S. Army acting for and on behalf of the

5  U.S. Department of the Army.  That you did knowingly,

6  directly and corruptly receive and accept a thing of value

7  personally, namely $50,000 in U.S. currency, in return for

8  being influenced in the performance of an official act as

9  defined by Title 18, U.S. Code, Section 20183; that is, an

10  effort to steer a U.S. Army contract for food service

11  supplies, including paper products and plastic flatware,

12  from the existing government contractor under the LOGCAP

13  III prime contract to the Kuwait business referred to

14  herein as Company A.

15         Count 2 charges bulk cash smuggling into the

16  United States.  It charges that on about December 14 of

17  2005, in the District of Delaware and elsewhere, you did,

18  with the intent to evade a currency reporting requirement

19  under Title 31, Section 5316, knowingly conceal more than

20  $10,000 in U.S. currency, that is approximately $40,000 in

21  U.S. currency, on your person, specifically in an article

22  of clothing you were wearing and in the luggage, backpack

23  and other container that you were carrying and wearing and

24  that you did knowingly transport said concealed currency

25  from a place outside the United States to a place within

1    the United States, that is Kuwait City to Dover, Delaware.

2         Count 3 is a forfeiture count.  It charges that

3    as a result of the foregoing bribery offense as alleged in

4    Count 1, that you should forfeiture to the United States

5    any and all interest that you may have, individually or in

6    association with others, in and to all personal property

7    involved in the aforestated offense and any property

8    traceable to such property, including but not limited to a

9    money judgment of at least $50,000, in that such sum in

10   aggregate is property which was involved in the

11   aforestated offense or is traceable to such property or,

12   in the alternative, if the $50,000 cannot be located, a

13   monetary judgment in that amount in favor of the United

14   States and against you.  Also, items of personal property,

15   ladies' two-tone Rolex watch, matching men's and women's

16   imitation Cartier watches, one Ablux ladies' gold watch

17   with matching bracelet.  And the list goes on.  It's on

18   page 6 of the information.  I assume you're familiar with

19   that list?

20   A    Yes, Your Honor.

21   Q    It goes on to assert that the proceeds from the sale

22   of these items should be applied to the monetary judgment

23   referred to.  As to substitute assets, if any of the

24   property described as being subject to forfeiture cannot

25   be located or has been transferred or sold or deposited

1  with a third party or has been placed beyond the

2  jurisdiction of the Court or has been substantially

3  diminished in value or co-mingled with other property

4  which can't be subdivided without difficulty, then it is

5  the intent of the United States to seek forfeiture of any

6  other real or personal property of yours up to the value

7  of the above-described forfeitable property.

8          The word "knowingly" is used in this charge one

9  or 7 times.  That word is defined as meaning that your

10  conduct was voluntary, that you understood what you were

11  doing, that your conduct was not the result of ignorance,

12  accident, mistake or some other innocent reason.  Do you

13  understand that definition?

14  A    Yes, Your Honor.

15  Q    Do you have any questions concerning what you're

16  charged with?

17  A    No, Your Honor.

18          THE COURT:  I do have a clarifying question for

19  counsel.  Do I understand correctly that in terms of the

20  forfeiture, you're looking for a total forfeiture of

21  $50,000, however that might --

22          MR. LANG:  That's correct.

23          THE COURT:  Thank you.

24  BY THE COURT:

25  Q    Concerning -- I do inform you now that you have a

1    constitutional right to be charged by an indictment of a

2    grand jury, but you can waive that right and consent to

3    being charged by information of the U.S. Attorney.

4            In this case, instead of proceeding by

5    indictment, these felony charges against you have been

6    brought by the U.S. Attorney by the filing of an

7    information.  Unless you waive indictment, you may not be

8    charged with a felony unless a grand jury finds by return

9    of an indictment that there is probable cause to believe

10    that a crime has been committed and that you committed it.

11    If you do not waive indictment, the Government may present

12    the case to the grand jury and ask it to indict you.

13            A grand jury is composed of at least 16 and not

14    7 than 23 persons and at least 12 grand jurors must find

15    that there is probable cause to believe that you committed

16    the crimes with which you are charged before you may be

17    indicted.  The grand jury might or might not indict you.

18    If you waive indictment by the grand jury, the case will

19    proceed against you on the U.S. Attorney's information

20    just as though you had been indicted.

21            Have you discussed waiving your right to

22    indictment by the grand jury with your attorney?

23    A    Yes, I have, Your Honor.

24    Q    Do you understand your right to indictment by a grand

25    jury?

1    A    Yes, Your Honor.

2    Q    Have any threats or promises been made to induce you

3    to waive indictment?

4    A    No, Your Honor.

5    Q    Do you wish to waive your right to indictment by the

6    grand jury?

7    A    Yes, Your Honor.

8            THE COURT:  Mr. Robertson, are you aware of any

9    reason why your client should not waive indictment?

10            MR. ROBERTSON:  No, Your Honor.

11    BY THE COURT:

12    Q    As I understand it, you have executed this waiver; is

13    that correct?  Did you read this waiver before you signed

14    it?

15    A    Yes, Your Honor.

16    Q    The Court enters an order and finding that the waiver

17    is knowingly and voluntarily made and it is accepted.

18            I believe you told me that you have previously

19    received a copy of the information; that is, the written

20    charges that I just described to you.  Have you fully

21    discussed those charges and the case in general, including

22    any possible defenses that you might have, with

23    Mr. Robertson as your attorney?

24    A    That's correct, Your Honor.

25    Q    Are you fully satisfied with the counsel,

1    representation and advice given to you in this case by

2    Mr. Robertson?

3    A    Yes, Your Honor.

4    Q    Do I understand correctly that your willingness to

5    plead guilty here this morning is due, at least in part,

6    to the discussions that you and your attorney have had

7    with the attorney for the Government leading up to the

8    execution of this written plea agreement?

9    A    Yes, Your Honor.

10    Q    Did you have a reasonable opportunity to read this

11    plea agreement and discuss it with your attorney before

12    you signed it?

13    A    Yes, Your Honor.

14    Q    Does the plea agreement represent in its entirety

15    every understanding that you have with the Government?

16    A    Yes, Your Honor.

17    Q    Do you understand the terms of the agreement?

18    A    Yes, Your Honor.

19    Q    I'm going to go through this agreement, not word or

20    word, but I do want to summarize what I understand to be

21    the operative terms.  I want you to follow along with me

22    if you would.

23        On page 1, it is the -- it indicates it is the

24    complete and only agreement between you and the United

25    States.

1          Paragraph 2, page 2, it is binding only upon the

2   U.S. Attorney for this federal district.  It doesn't bind

3   any other prosecutor or investigating agency.

4          Paragraph 3, if you plead guilty and I accept

5   your plea but at sentencing I don't accept your sentencing

6   recommendation, you would not have the right to withdraw

7   your plea.  You agree to come in here today and plead

8   guilty to Count 1 charging you with receiving a bribe,

9   Count 2 with bulk cash smuggling, and then of course the

10  forfeiture count.

11         On page 4, paragraph 6, is a discussion of the

12  penalties you're facing if you plead guilty.  Count 1

13  carries a maximum penalty of up to 15 years in prison, a

14  fine of up to $250,000, a supervised release term of up to

15  3 years and a special assessment of $100.

16         This reference to supervised release means that

17  at the time of sentencing, if you are sentenced to jail or

18  prison, the Court would also order at the same time that

19  beginning the day you're released from custody you would

20  go through a period of supervision.  During that time your

21  conduct would be subject to a number of terms and

22  conditions.  If it was later determined that you had

23  violated any of those terms, you could be sent back to

24  prison.  Do you understand that?

25  A    Yes, sir.

1    Q    Then Count 2 carries a penalty of up to 5 years in

2    prison, a fine of up to $250,000, a supervised release

3    term of up to 3 years and a special assessment of $100.

4         Now if those two sentences were to be imposed

5    consecutively, which is a very rare event but technically

6    speaking it could happen, consecutive meaning you would

7    not begin the sentence on Count 2 until you finished the

8    sentence on Count 1, under those circumstances the

9    maximums you're facing are prison for up to 20 years, a

10   fine of up to $500,000, supervised release term of up to

11   6 years and a special assessment of $200.  You may also be

12   ordered to pay restitution.  As I understand it, there is

13   no present agreement about restitution?

14        MR. LANG:  There's no agreement regarding

15   restitution.

16   Q    So that's one of the things that the Court would take

17   a look at at the time of sentencing and both sides would

18   have the opportunity to present evidence and argument and

19   ultimately I would decide the proper amount of

20   restitution.  Do you understand?

21   A    Yes, Your Honor.

22   Q    Page 5, paragraph 10, is a section entitled "Waiver

23   of Right of Appeal From Conviction and Sentence".  In this

24   paragraph you are, in most respects, giving up the right

25   to file a direct appeal to the Court of Appeals in

1    Chicago.  In such an appeal, a person could claim that

2    there was something unlawful or unconstitutional about the

3    process that was used here or the sentence itself.  That

4    could even include a claim that your attorney had not

5    effectively represented you.  In this paragraph you're

6    giving up the right to file such an appeal with two very

7    narrow exceptions.  Number one:  If the Court were to

8    impose a sentence that was beyond the statutory maximum

9    provided by law.  And number two:  You would not be barred

10   from claiming on a direct appeal that your attorney had

11   not effectively represented you regarding the negotiation

12   of this plea agreement.  But other than that, you're

13   waiving your right to file a direct appeal.  Do you

14   understand that?

15   A    Yes, Your Honor.

16   Q    Do you have any questions concerning the very broad

17   scope of the waiver?

18   A    No, Your Honor.

19   Q    Then the next paragraph, paragraph 11, is also a

20   waiver provision, "Waiver of Right to Collateral Attack".

21   That's a process that would occur here in the trial court

22   after sentencing.  In such a proceeding, which is usually

23   initiated by what's called a petition for writ of habeas

24   corpus, a person again could claim that there was

25   something unlawful or unconstitutional about the process

1   or the sentence.  Again, they could claim their attorney

2   had not effectively represented them.  In paragraph 11,

3   you're giving up the right to do that period.  Do you

4   understand?

5   A    Yes, Your Honor.

6   Q    Any questions about the scope of that?

7   A    No, Your Honor.

8   Q    Beginning on page 7, paragraph 12, going through

9   paragraph 16 on page 10, is a section entitled "Advisory

10  Guidelines".  Do you have any questions about those

11  provisions?

12  A    No, Your Honor.

13  Q    I do want to direct your attention specifically to

14  paragraph 16.  In that paragraph the United States

15  reserves the right in its sole discretion to request that

16  the Court consider imposing a sentence below the advisory

17  guideline range if you provide substantial assistance in

18  the investigation or prosecution of other crimes.  A

19  decision, if any, to recommend a particular sentence below

20  the guideline range would depend solely upon the U.S.'s

21  evaluation of the nature, extent and value of your

22  assistance.

23       You need to understand about this paragraph,

24  first, only the United States can file that motion.  Your

25  attorney can't file it.  I can't raise the issue on my

1    own.  And if you have a disagreement with them, with the

2    United States, as to whether or not they should file that

3    motion, you have no way of forcing them to do it.

4         Second, you have no way of forcing them to ask

5    for an amount of downward adjustment that you might feel

6    is fair.

7         And third, even if they file the motion, it's

8    entirely in the Court's discretion whether to grant it or

9    deny it, so I could do either one.  Do you understand that

10   explanation?

11   A    Your Honor, how I understand it, it's not guaranteed.

12   The guidelines are not guaranteed.

13   Q    Pardon?

14   A    If I'm understanding, the guidelines are not

15   guaranteed.

16   Q    No.  This deals -- well, the guidelines are not

17   guaranteed in the sense that once the Court determines

18   what the exact guideline range is, you may or may not be

19   sentenced within that guideline range.

20        I'll jump ahead a little bit and tell you that

21   once the guideline range is determined on the date of

22   sentencing, depending on the findings that the Court makes

23   at sentencing regarding the sentencing factors, the Court

24   has the discretion to impose a sentence that is above the

25   guideline range or within the guideline range or below the

1    guideline range.

2            And then in addition to that, this paragraph we

3    were just talking about, the Government may come in and

4    say, "Look, Judge, the defendant has provided us a lot of

5    valuable cooperation and, because of that, we think you

6    should impose a sentence below the guideline range."  But

7    they may or may not do that and if they do, it's entirely

8    my discretion as to whether or not to approve that.  Do

9    you understand?

10   A    Yes, Your Honor.

11   Q    Okay.  Beginning on page 10, paragraph 17, going

12   through paragraph 20 on page 12, is a section entitled

13   "Defendant's Obligations".  Any questions about that

14   section?

15   A    No, Your Honor.

16   Q    The next section, "U.S. Attorney's Obligations",

17   paragraphs 21 through 23, any questions on that?

18   A    No, Your Honor.

19   Q    The factual basis, which is paragraph 24, runs from

20   page 13 into the middle of page 19, did you read that

21   factual statement carefully before you signed it?

22   A    Yes, Your Honor.

23   Q    Is that an accurate statement of what happened?

24   A    Yes, Your Honor.

25   Q    Paragraph 25 is entitled "Forfeiture" and that

1    indicates your understanding that you have a right to

2    contest or dispute the criminal forfeiture alleged in

3    Count 3.   Nonetheless, you stipulate and agree to the

4    entry of a money judgment against you and in favor of the

5    United States in the sum of $50,000.

6         Page 20 -- well, you're also agreeing to the

7    forfeiture of the property listed on the top of page 20 if

8    there is insufficient cash, I assume, to do that.

9         MR. LANG:  To clarify, we believe that -- we're

10    agreeing that the items that are listed were proceeds of

11    the $50,000.  At the end of the first paragraph there,

12    paragraph 25, it says the sale of those proceeds shall be

13    applied to the $50,000 judgment.

14    Q    So you're agreeing to the sale of those items.

15    A    Yes, Your Honor.

16    Q    Paragraph 26 on page 20 says "Effect of Violation of

17    Agreement".   That details the options that are available

18    to the Government if they conclude that you have violated

19    the terms of the agreement.  But then paragraph 27 on the

20    next page goes on to explain that before they could

21    exercise any of those options, they would have to come

22    into court, file a motion claiming that you had violated

23    the terms of the agreement.  There would be a hearing.  At

24    the hearing, they would have the burden of proving by a

25    preponderance of the evidence that you had violated the

1   agreement and ultimately the Judge would determine that.

2   Do you understand?

3   A    Yes, Your Honor.

4   Q    Are these the terms of your plea agreement with the

5   United States as you understand them?

6   A    Yes, Your Honor.

7          MR. LANG:  Your Honor, there's one non-routine

8   waiver of rights.  It's item E, venue waiver.

9          THE COURT:  Where is it?

10          MR. LANG:  Page 22, sub-paragraph E.

11          THE COURT:  Let me take a look at that.  The

12   venue provision?

13          MR. LANG:  Yes.

14   BY THE COURT:

15   Q    I was going to ask about that.  At the bottom of

16   page 22, sub-paragraph E entitled "Venue", it says that to

17   the extent that any venue issue may exist with respect to

18   the charges alleged in the information, you hereby

19   knowingly and specifically waive any and all rights to

20   challenge your prosecution in this district on the basis

21   of venue; that is, that the charges were

22   unconstitutionally or otherwise improperly brought in this

23   district as opposed to being filed in another district.

24   You acknowledge that absent this waiver, you would have

25   the right to challenge your prosecution on the basis of

1    venue and you acknowledge the provision of the law that

2    says that trial of all crimes shall be in the state where

3    the crime shall have been committed and that the Sixth

4    Amendment calls for trial by an impartial jury of the

5    state and district where the crime is committed and that

6    Rule 18 of the Federal Rules of Criminal Procedure

7    establishes that prosecution shall be in the district for

8    which -- in which the offense was committed.  Nonetheless,

9    recognizing all this, you agree to voluntarily waive

10    venue.  Do you understand that you're giving up any rights

11    you would have to challenge venue?

12    A    Yes, Your Honor.

13    Q    Has anyone made any other or different promise or

14    assurance of any kind to you in an effort to induce you to

15    plead guilty?

16    A    No, Your Honor.

17    Q    Has anyone attempted in any way to force you to plead

18    guilty?

19    A    No, Your Honor.

20    Q    Are you pleading guilty of your own free will because

21    you are guilty?

22    A    Yes, Your Honor.

23    Q    Do you understand that the offenses to which you are

24    pleading guilty are felony offenses?  If your pleas are

25    accepted, you will be adjudged guilty of those offenses.

1    Such adjudication may deprive you of valuable civil rights

2    such as the right to vote, the right to hold public

3    office, the right to serve on a jury and the right to

4    possess any kind of firearm.   Do you understand?

5    A    Unfortunately, yes, Your Honor.

6    Q    And, specifically, this right to possess any kind of

7    firearm, being in the military, I'm sure you would have to

8    be aware of the ramifications of that.

9    A    Yes, Your Honor.

10   Q    Okay.   I've already discussed the maximum possible

11   penalties provided by law in this case.   There are no

12   mandatory minimum custody penalties.   We've discussed the

13   element of supervised release.   Do you understand that if

14   you were to violate the conditions of supervised release,

15   you could be given additional time in prison?

16   A    Yes, Your Honor.

17   Q    And we've also discussed the fine amounts and the

18   special assessments, also the component of restitution

19   which is yet to be determined.   Do you understand all of

20   these possible consequences of your plea?

21   A    Yes, Your Honor.

22   Q    Have you and Mr. Robertson talked about how the

23   sentencing guidelines might apply to your case?

24   A    Yes, Your Honor.

25   Q    Do you understand that the Court will not be able to

1    determine the advisory guideline range for your case until

2    after the pre-sentence report has been completed and you

3    and the Government have had an opportunity to challenge

4    the reported facts and the application of the guidelines

5    recommended by the probation officer and that the sentence

6    imposed may be different from any estimate your attorney

7    may have given you up to this point?  Do you understand

8    that?

9    A    Yes, Your Honor.

10              THE COURT:  Mr. Robertson, what is the worst

11   case scenario that you've discussed with your client

12   concerning the guidelines?

13              MR. ROBERTSON:  Basically, Your Honor, the worst

14   case scenario would be -- the top of the imprisonment

15   range would be 36 months.  The level escapes me right now,

16   but we figured that a criminal history I and the top of

17   the guideline range was 36 months.

18   BY THE COURT:

19   Q    Is that correct?  Have you had that discussion?

20   A    Yes, Your Honor.

21   Q    What you need to understand about that today is that

22   at the time of sentencing if your sentencing came in

23   higher than that, you would not have the right to withdraw

24   your plea.  Do you understand that?

25   A    Yes, Your Honor.

Q    As I said before, do you understand that once the range has been determined, then at the sentencing hearing, based on the findings that I make, the Court could impose a sentence that's above the range or within the range or below the range?

A    Yes, Your Honor.

Q    Parole has been abolished.  If you are sentenced to prison, you will not be released on parole.  What that means is you would serve -- well, strike that.  As to any sentence of up to 12 months, you would serve 100 percent of your sentence period.  If your sentence is to a term of 7 than 12 months, then you would serve 100 percent of your sentence except you would qualify for up to 54 days of good time reduction a year, so assuming good behavior you would serve about 85 percent of your sentence.  Do you understand that?

A    Yes, Your Honor.

Q    Do you understand that you're giving up, with these two narrow exceptions -- by entering into this plea agreement, you're giving up, waiving your right to almost all of your right to appeal or collaterally attack any part of the sentence?

A    Yes, Your Honor.

Q    Do you understand that under some circumstances, the Government may have the right to file an appeal?

1    A    Yes, Your Honor.

2    Q    Do you understand that you have a right to plead not

3    guilty to any offense charged against you and to persist

4    in that plea, that you would then have the right to a

5    trial by jury, that at trial you would be presumed to be

6    innocent and the Government would have to prove your guilt

7    beyond a reasonable doubt, that you would have the right

8    to the assistance of counsel for your defense, the right

9    to see and hear all the witnesses and have them

10   cross-examined in your defense, the right on your own part

11   to decline to testify unless you voluntarily elected to do

12   so in your own defense and the right to the issuance of

13   subpoenas or compulsory process to compel the attendance

14   of witnesses to testify in your defense.  Do you

15   understand all those rights?

16   A    Yes, Your Honor.

17   Q    Do you understand that at such a trial, should you

18   decide not to testify or not to put on any evidence, those

19   decisions cannot be used against you?

20   A    Yes, Your Honor.

21   Q    Do you further understand that by entering a plea of

22   guilty, if that plea is accepted by the Court, there will

23   be no trial and you will have waived or given up your

24   right to a trial as well as those other rights associated

25   with a trial as I've just described them?