IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT ROCK ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06-40117 |
| v. ) | |
| ) | |
| PELETI PELETI, JR., a/k/a "PETE," ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE
TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through Rodger A. Heaton, United States Attorney for the Central District of Illinois, and the undersigned Assistant U.S. Attorney, hereby responds to defendant Peleti Peleti, Jr.'s Sentencing Memorandum filed during the evening of Friday, February 15, 2008, and states:

**A.  Enhancement for Obstruction of Justice**

1.  On February 9, 2007, defendant Peleti Peleti, Jr., pleaded guilty pursuant to a written plea agreement. However, on July 20, 2007, after the PSR had been prepared, revised, and disclosed, Peleti filed a motion to withdraw his guilty pleas. (D.E. 21) Among other things, Peleti contended for his motion that his guilty plea hearing was flawed, in large part, because he was abandoned and duped by his attorney, Donovan Robertson, who, according to Peleti, provided ineffective assistance of counsel. (Memorandum, pp.16-21)

2.  In support of his motion, Peleti falsely claimed in his declaration (D.E. 32), *inter alia*, that at no time prior to his entry of a guilty plea on February 9, 2007, did Mr. Robertson ever explain or even discuss with him the potential risks or benefits of

proceeding to trial (¶9); Mr. Robertson never discussed with him the possible defenses to the charges he faced, or the strengths or weaknesses of the government's case against him (¶9); Mr. Robertson did not explain anything about the contents of the plea agreement (¶20); and that Peleti did not have any substantive or meaningful discussion with Mr. Robertson regarding the contents of the plea agreement. (¶22)

3.   Peleti's motion and allegations resulted in an evidentiary hearing, the first segment of which was held on October 5, 2007. Peleti testified on that date. Among other things, Peleti falsely testified that he didn't believe he had seen a plea agreement prior to February 9, 2007 (D.E. 40, p. 66, l. 15-17); he never had a discussion about the plea agreement and the guidelines with Mr. Robertson until he received the plea agreement one or two minutes before the plea on February 9, 2007 (p. 67, l.15-21); and that he only had "probably seven" telephone calls with Mr. Robertson to discuss his case (p. 78, l. 3-19).

4.   The second segment of the evidentiary hearing was held on October 26, 2007. Mr. Robertson testified on that occasion. Mr. Robertson established that in October 2006, he sent to Peleti the plea agreement and correspondence regarding such dated October 4, 2006 (Gov. Ex.103); that he had discussed with Peleti the plea agreement and the sentencing guidelines well before February 9, 2007; and that he had spoken with Peleti by telephone at least 30 times (and perhaps as many as 40) about the case. (Gov. Ex. 8)

5.   On October 31, 2007, the Court announced its findings and denial of Peleti's motion to withdraw his guilty pleas. The Court found Mr. Robertson's testimony to have been credible and indicated that Peleti had not been credible during his own testimony.

Because Peleti willfully attempted to obstruct and impede the administration of justice with respect to his prosecution, the United States respectfully requests that this Court make a finding to that effect. The United States has concluded that the Pre-sentence Investigation Report (PSR) properly assesses a two-level increase at Paragraph 38 for Obstruction of Justice under U.S.S.G. § 3C1.1.

6.   In his Sentencing Brief, Peleti acknowledges the Seventh Circuit standard that, for the purposes of a § 3C1.1 analysis, a criminal defendant commits perjury if, while under oath, he "gives false testimony concerning a material matter with a willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." P. 6, Sent. Memo., citing *United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001). However, Peleti then asserts that such testimony must involve matters "crucial to the question of the defendant's guilt." P. 6, Sent. Memo. He further alleges that perjury should not be reflected in an enhancement unless it "actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." P. 6, Sent. Memo. Peleti thereafter concludes that even assuming he intentionally testified falsely, the § 3C1.1 enhancement for obstruction "is not applicable because the testimony at issue was regarding a collateral matter to his guilt or innocence of the charges." However, Peleti's view of obstruction as contemplated § 3C1.1 is simply too narrow; this enhancement should be applied under the circumstances of this case.

7.   Section 3C1.1 provides: "if the defendant willfully impeded or obstructed, or attempted to impede or obstruct, the administration of justice during the investigation or

prosecution of the instant offense, increase the offense level by 2 levels." For the purposes of this enhancement, obstruction of justice includes the commission of perjury that pertains to conduct that forms the basis of the offense of conviction, as well as the act of "providing materially false information to a judge or magistrate." U.S.S.G. § 3C1.1, cmt. (n.4(b), (f)). Perjury is defined as a defendant's "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Turner*, 203 F.3d 1010, 1020 (7th Cir. 2000) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). Before imposing the enhancement, the district court must make independent findings as to all of the elements of perjury: falsity, willfulness, and materiality. *Turner*, 203 F.3d at 1020. Here, Peleti's false testimony concerning the specifics of his discussions with, and guidance from, his former attorney satisfied each of those elements, so under Seventh Circuit precedent, he should be held accountable for his perjurious testimony before this Court.

8.      In *United States v. Carroll*, 412 F.3d 787 (7th Cir. 2005), the defendant was assessed a two-level increase under U.S.S.G. § 3C1.1 following a hearing on a motion to withdraw his guilty pleas to methamphetamine and firearm charges. Carroll had pleaded guilty pursuant to a plea agreement, but thereafter claimed for his motion that he never had time to review new discovery information before the government's plea deadline, and that his attorney rendered ineffective assistance by overstating the amount of time Carroll would face if he went to trial and by "strong-arming" him to accept the plea agreement. *Id.* at 790. Carroll specifically claimed that he protested his innocence to his attorney, that

his attorney had not prepared any defense, and that he was told by his attorney that he would receive an 85-year prison sentence if convicted at trial but a relatively light sentence under the plea agreement. Carroll signed the plea agreement and entered his guilty pleas, but thereafter filed his motion to withdraw them. After Carroll testified during the resulting hearing, the district court found, "Carroll's explanation of the events culminating in his guilty pleas was unsatisfactory and not credible, citing in particular the dispute over whether his attorney raised the specter of an 85-year sentence, which the court found dubious." *Id.* at 791. As a result, Carroll was disqualified from acceptance-of-responsibility credit and his testimony was deemed perjurious for the purpose of a sentencing enhancement for obstruction under § 3C1.1.

9.    In upholding the § 3C1.1 enhancement in Carroll's sentence and the district court's denial for acceptance-of-responsibility credit under § 3E1.1, the Seventh Circuit observed:

> The district court made several findings that Carroll was lying. It found his testimony that Brown told him he would be sentenced to 85 years' imprisonment was not credible: Particularly, [Brown] did not say 85 years. And when you begin to go more than just the usual lack fo credibility and go so far beyond, it smacks of intentional lying and deceit under oath. This is not the type of lawyer that is going to tell him 85 years, nor has he agreed that he did tell him that. The court also found that Carroll falsely testified that the various pseudoephedrine pills found in his quarters were prescribed to him in order to treat a medical condition; the prescription that Carroll proffered for the pills dated from after his arrest. But overall the court based its findings of perjury on Carroll's previous admissions, including his sworn statements during the plea colloquy and an admission that he kept the weapon to protect himself because he carried large amounts of cash. The

>court's determination that Carroll perjured himself in support of the motion to withdraw is not a clear error, and the district court did not misapply the guidelines in its application of § 3C1.1.

Id. at 793-94.

10. Other Circuits are in accord. In circumstances remarkably similar to the case at hand, the First Circuit considered the defendant's testimony in *United States v. Austin*, 948 F.3d 783 (1st Cir. 1991). There, Austin pleaded guilty to drug charges, but then filed a motion to withdraw his guilty pleas, claiming that they were not voluntarily entered because, in recommending the guilty pleas at the eleventh hour before trial, previous counsel had afforded him too little time to consider whether a guilty plea was appropriate. Thus, Austin contended, in essence, that his guilty pleas were not informed ones. *Id.* at 785. Austin conceded to the district court "that the government's version of the case was substantially true and he did not assert a claim of legal innocence or suggest the existence of any meritorious defenses." *Id.* at 787. The First Circuit concluded that Austin understood and accepted his attorney's advice to plead guilty, and that he was "free to choose more time to decide how to plead and there is no evidence of duress, threats or harassment. *Id.* The First Circuit further observed, "No evidence has been offered which proves that reasonably proficient counsel would have concluded there was no viable defense and recommended a guilty plea sooner than retained counsel." *Id.* The First Circuit upheld the district court's determination that Austin's testimony during the hearing constituted perjury and "an unsuccessful attempt to obstruct justice" for the purposes of a § 3C1.1 enhancement. *Id.* at 788. Accordingly, the First Circuit held that, "where a

defendant perjures himself before the court, the court is without discretion in imposing the two point base offense level found in Federal Sentencing Guidelines § 3C1.1." *Id.* In other words, once the district court found that Austin's testimony was intentionally untrue and constituted perjury, the court was mandated by Federal Sentencing Guidelines to impose the § 3C1.1 two level enhancement. *Id.*

11.    In 2002, the Fifth Circuit similarly concluded during a motion-to-withdraw-guilty-plea hearing in a tax case that the defendant's statements under oath regarding the circumstances surrounding his guilty plea, which the district court found to be untruthful, properly led the court to impose the obstruction of justice enhancement. *United States v. Adam,* 296 F.3d 327 (5th Cir. 2002). As the Fifth Circuit observed, "the enhancement for obstruction of justice 'is proper any time the defendant is aware of the action or investigation against him and he conceals or attempts to conceal information material to the investigation, prosecution, or sentencing of the instant offense.'" *Id.* at 334-35.

12.    In the context of suppression hearings, the Seventh Circuit has long recognized that false testimony during such hearings can constitute perjury and trigger a two-level enhancement under U.S.S.G. § 3C1.1. *See, e.g., United States v. Barnett*, 939 F.2d 405 (7th Cir. 1991) (false testimony regarding circumstances surrounding defendant's confession justifies obstruction enhancement); *United States v. Durman,* 30 F.3d 803 (7th Cir. 1994) (false testimony surrounding arrest and consent to search which was contradicted by arresting officers warrants enhancement for obstruction); *United States v. Hall*, 101 F.3d 1174 (7th Cir. 1996) (defendant's testimony that confessions were product of drug-induced

psychosis refuted by officers' observations of normal behavior constituted obstruction for sentencing enhancement); *United States v. Doe*, 149 F.3d 634 (7th Cir. 1998) (false denial of making post-arrest statement and allegation that police held gun to head during interrogation proper basis for obstruction enhancement); *United States v. Stokes*, 211 F.3d 1039 (7th Cir. 2000) (defendant's false testimony that he did not receive *Miranda* warnings was material and made with intent to interfere with the proceedings; thus obstruction enhancement warranted); *United States v. Jackson*, 300 F.3d 740 (7th Cir. 2002) (district court finding that defendant lied about facts giving rise to *Terry* stop sufficient support for obstruction enhancement); *United States v. Bass*, 325 F.3d 847 (7th Cir. 2003) (defendant's false testimony that he had used his turn signal night of incident constituted obstruction for enhancement purposes).

13.   Likewise, perjury committed during detention hearings can constitute obstruction of justice for the purpose of a two-level enhancement under U.S.S.G. § 3C1.1. See, *e.g., United States v. Jones*, 308 F.3d 425 (4th Cir. 2002) (perjurious testimony given in pre-trial proceedings may be considered in determining whether to apply obstruction enhancement, including false testimony about defendant's domestic dispute as opposed to drug case with which he was charged).

14.   Here, Peleti sought to invalidate his guilty pleas with allegations that his former attorney was ineffective, and that he had not knowingly and voluntarily pleaded guilty. Peleti's false testimony alleging defective quantity and quality of advice from his former attorney was intended by him to mislead this Court into concluding that his former

attorney was indeed ineffective. If this Court had made such a finding, Peleti's efforts to withdraw his guilty plea in the case would have been successful. It does not matter that Peleti's perjurious efforts failed and did not ultimately impede the prosecution. See, *e.g., United States v. Gunning*, 984 F.2d 1476, 1485 (7th Cir. 1993) (false statements under oath at detention hearing which could have affected or influenced magistrate judge's detention decision regarding co-defendant were material and constituted perjury for imposing obstruction enhancement under §3C1.1). Following the hearing on Peleti's motion, this Court concluded that Peleti's former attorney's testimony was credible and that Peleti's was not concerning certain specific details surrounding their communications and discussions about the case. The conflict between their accounts provides the basis for this Court to now conclude that Peleti committed perjury during his testimony and that an enhancement for obstruction is warranted. Accordingly, the United States respectfully requests that this Court make such a finding and impose an enhancement under § 3C1.1.

**B. Denial of Acceptance of Responsibility**

15.  Peleti also seeks credit and a downward adjustment for acceptance of responsibility under § 3E1.1. The United States does not quibble with the notion that prior to filing his motion to withdraw his guilty pleas, Peleti had proceeded as if he was accepting responsibility for his crimes as contemplated by § 3E1.1. However, once he filed his motion to withdraw his guilty pleas, supported with his affidavit appended thereto (D.E. 32), his acceptance came to a grinding halt. As is reflected above, Peleti claimed in his declaration (D.E. 32), *inter alia*, that at no time prior to his entry of a guilty plea on February

9, 2007, did Mr. Robertson ever explain or even discuss with him the potential risks or benefits of proceeding to trial (¶9); Mr. Robertson never discussed with him the possible defenses to the charges he faced, or the strengths or weaknesses of the government's case against him (¶9); Mr. Robertson did not explain anything about the contents of the plea agreement (¶20); and that Peleti did not have any substantive or meaningful discussion with Mr. Robertson regarding the contents of the plea agreement. (¶22)

16.    Those false allegations, followed by Peleti's likewise-false testimony during the hearing on the motion to withdraw his guilty pleas, are inconsistent with acceptance of responsibility and he has forfeited credit for such. *United States v. Lopinski*, 240 F.3d 574, 576 (7th Cir. 2001). There the Seventh Circuit concluded that the district court had erred in granting Lopinski acceptance credit despite the fact he filed a motion to withdraw his plea and gave false testimony in support of it. As the court in Lopinski noted, ". . . these ruminations cannot help Lopinski, who forfeits his acceptance of responsibility discount not because of the state of his hear but because he tried to have things both ways - to have a chance at acquittal plus the discount for foregoing that chance, and because he used up a lot of prosecutorial time by the motion to withdraw the plea (surely as complex as many a trial) and his appeal." *Id*. Further, as the Seventh Circuit recognized, ". . . the more important point is that, as we have already suggested, the law cannot tolerate a situation in which a criminal defendant plays heads I win tails you lose by combining a perjurious attack on his guilty plea with an appeal for mercy if the attack fails." Id. Here, that is precisely what Peleti has tried to do.

**C. Downward Departure**

17.     Peleti also seeks a "downward departure" from his sentencing range under the advisory sentencing guidelines based upon the facts of this case, his previous lack of criminal history, and his "extraordinary public service."  P. 8, Sent. Memo.  First, the United States has concluded that while another person may have hatched the bribery scheme, and that Peleti may not have actually been in a position to actually deliver as much as the payer of the bribe hoped based upon Peleti's promise when he accepted the $50,000 cash, no evidence exists that Peleti's crimes were somehow unique to the corruption world. In other words, Peleti's crimes does not constitute "a less serious bribery violation."  P.11, Sent. Memo.  Along these same lines, what Peleti did with most of the cash after he received it – smuggling it into the United States and falsifying a U.S. Customs Declaration form – does not signify aberrant intentions, aberrant behavior, nor atypical criminal activity.  Second, the fact that Peleti had no prior criminal history is already factored into his guidelines calculations. White collar defendants routinely face the criminal justice system for the first time without having previously been convicted of other crimes.  Third is Peleti's claim that his extraordinary public service merits a deviation below his sentencing guidelines range.  The United States has no evidence to suggest that prior to about 2003, Peleti's service in the U.S. Army was anything short of outstanding.  That fact, among many others, should indeed be considered by this Court in formulating a sentence for Peleti. However, during the sentencing hearing, the United States will present evidence reflecting improprieties in Peleti's professional and personal conduct beginning in about

2003.  Based thereupon, the United States respectfully submits that no basis exists for a sentence below Peleti's applicable imprisonment range under the Sentencing Guidelines.

**WHEREFORE**, the United States respectfully requests that defendant Peleti Peleti, Jr., be sentenced in accordance with the PSR prepared in this matter.

        Respectfully submitted,

        RODGER A. HEATON
        UNITED STATES ATTORNEY

BY:   /s/ Jeffrey B. Lang
        JEFFREY B. LANG
        ASSISTANT U.S. ATTORNEY
        1830 Second Avenue, Third Floor
        Rock Island, Illinois  61201
        Telephone (309) 793-5884

**CERTIFICATION OF SERVICE**

I hereby certify that on February 19, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following: Lewis O. Romero, Paul Leland Alaga, David M. Michael.

        /s/ Jeffrey B. Lang
        JEFFREY B. LANG
        ASSISTANT U.S. ATTORNEY